Filed 11/14/18; Certified for Publication 11/20/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., | B289109 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC500040) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LARCO PRODUCTIONS, INC., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Elihu M. Berle, Judge.  Petition granted.

Irell & Manella, Steven A. Marenberg, Josh B. Gordon and Andrew J. Strabone for Petitioner.

No appearance for Respondent.

Kiesel Law, Paul R. Kiesel, Jeffrey A. Koncius, Nicole Ramirez; Boucher, Raymond P. Boucher, Shehnaz M. Bhujwala, Maria L. Weitz; Johnson & Johnson, Neville L. Johnson, Douglas L. Johnson and James T. Ryan for Real Parties in Interest.

_____

**SUMMARY**

On March 26, 2018, the trial court in this putative class action filed on January 29, 2013, denied defendant's motion to dismiss for failure to bring the action to trial within five years (Code Civ. Proc., §§ 583.310 & 583.360).[1] The court then granted plaintiffs' motion for trial preference, setting the case for trial "immediately" (on April 10, 2018). This was six days before the five-year period was to expire, calculated to include a disputed 43-day tolling period the court found applicable under section 583.340, subdivision (b) (hereafter, section 583.340(b)) (excluding from the calculation time during which "[p]rosecution or trial of the action was stayed or enjoined").

The court set the matter for trial despite these circumstances: Plaintiffs' motion for class certification – the hearing of which was also advanced to April 10, 2018 – had not yet been decided; the court "[did] not believe that the reasonable diligence has been exercised" with respect to class certification; discovery on the merits of plaintiffs' claims had not yet been permitted; and the court had "not yet determined the order of the trial" (but ordered the parties to file, by April 2, 2018, "the joint exhibit list, joint statement to be read to the jury, joint witness list, joint jury instruction and joint verdict form").

_____

[1] All further statutory references are to the Code of Civil Procedure.

2

We grant defendant's petition for a writ of mandate and order the trial court to dismiss the entire action as required under sections 583.310 and 583.360. We hold that:

An order staying responsive pleadings and outstanding discovery requests, while also requiring the parties to "negotiate and agree . . . on a case management plan" and to prepare and file a joint statement specifically addressing case-related issues in multiple areas (and also allowing the parties to informally exchange documents), does not "effect a complete stay of the prosecution of the action" within the meaning of *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1087 (*Gaines*), and *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 730 (*Bruns*). Consequently, the trial court erred when it concluded the five-year period was tolled for 43 days because of such a stay, issued at the outset of the case. Thus, the five-year period expired on March 2, 2018, and dismissal of the action was mandatory.

Alternatively, even if we assume the 43-day tolling period was permissible, the trial court's order granting trial preference and setting the trial for April 10, 2018, the same date on which plaintiffs' motion for class certification was to be heard, was a manifest abuse of discretion. Well-settled principles of law tell us that (1) generally courts "should not resolve the merits in a putative class action case before class certification and notice issues absent a compelling justification for doing so" (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1083 (*Fireside Bank*), and (2) a class action is subject to dismissal under the five-year statute if the class issues are not decided, including notice to class members, with enough time "to allow even a minimally reasonable period for exercise by the class members of their options" (*Massey v. Bank of America* (1976) 56 Cal.App.3d 29, 33 (*Massey*)). Setting a trial to begin one week before expiration of the five-year statute is

3

impermissible and would render the *Fireside Bank* and *Massey* principles a nullity.  Nor does the "ceremonial" principle stated in *Hartman v. Santamarina* (1982) 30 Cal.3d 762, 766 (*Hartman*) – allowing "the pro forma commencement of the trial" in order to "preserv[e] the right to a trial on the merits" in the face of the five-year statute – apply to the circumstances in this case.

**FACTS**

## 1.    The Complaint and Related Actions

On January 29, 2013, Stuntman, Inc., a loan-out company for the services of Hal Needham, a writer and director, filed a class action complaint against Warner Bros. Entertainment, Inc. (defendant or petitioner).  The substance of the complaint was that defendant failed to account properly to profit participants (Mr. Needham and class members) for income derived from the distribution of motion pictures on home video formats.  The complaint asserted defendant engaged in the systematic practice of accounting to and crediting profit participants based on 20 percent of home video revenue, while it should have done so based on 100 percent of that revenue.

Other named plaintiffs, represented by some of the same law firms representing plaintiffs in this case, filed similar lawsuits against other studios (Universal City Studios LLC, Paramount Pictures Corp., Twentieth Century Fox Film Corp., and Sony Pictures Entertainment, Inc.).

On February 15, 2013, Judge Elihu M. Berle issued an initial status conference order in the Paramount Pictures case, staying those proceedings pending further order of the court and setting an initial status conference for April 16, 2013.

On February 28, 2013, Judge Lee Edmon (to whom this case was originally assigned) issued a similar order in this case.

On March 4, 2013, the five lawsuits were related.

4

The parties agree that as a result of the March 4, 2013 order relating the cases, Judge Berle's initial status conference order was entered in this case, and that the stay Judge Berle ordered lasted for 43 days.[2]

## 2. The Initial Status Conference Order

Judge Berle's order included the following provisions. With respect to the stay, the order stated:

"To facilitate the management of this complex case through the development of orderly schedules for briefing and hearings on procedural and substantive challenges to the complaint, discovery, and other issues, pending further order of this Court, and except for service of the summons and complaint and as otherwise provided in this Initial Status Conference Order, these proceedings are stayed in their entirety. This stay shall preclude the filing of any responsive pleadings, including any answer, demurrer, motion to strike, or motions challenging the jurisdiction of the Court. However, any defendant may file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. . . . This stay shall not preclude the parties from continuing to informally exchange documents that may assist the parties in their initial evaluation of the issues presented in this case; however, it shall stay all outstanding discovery requests. [¶] Nothing herein stays the time for filing an

---

[2] Despite this agreement, plaintiffs refer to Judge Edmon's February 28, 2013 minute order, while defendant uses Judge Berle's order. There are no substantive differences in these orders. We will use Judge Berle's order, because the joint initial status conference report filed by the parties on April 8, 2013, states that it was submitted "pursuant to the Court's February 15, 2013 and March 4, 2013 Initial Status Conference Orders."

5

affidavit of prejudice pursuant to Code of Civil Procedure Section 170.6."

The remainder of the order concerned what the parties were required to do before the initial status conference on April 16, 2013, while the stay of responsive pleadings and outstanding discovery requests was in effect. Thus:

Counsel were ordered to meet and confer to discuss 17 matters, "and to prepare to address these issues with this Court at the Initial Status Conference."

Plaintiffs' counsel was ordered "to take the lead in preparing" a joint initial status conference report to be filed before the initial status conference. The order delineated the 17 matters to be addressed in the joint report. These included such matters as the service list, any issues of jurisdiction or venue, an outline of claims and cross-claims, a list of related litigation, a description of core factual and legal issues, a description of discovery completed and any outstanding discovery, issues regarding electronic discovery, whether particular documents could be voluntarily exchanged, and so on.

The parties were required to set forth their positions on those matters separately if they could not agree. The order encouraged the parties "to propose, either jointly or separately, any approaches to case management that they believe will promote the fair and efficient handling of this case. The Court is particularly interested in identifying potentially dispositive or significant threshold issues which may assist in early resolution or moving the case toward effective ADR and/or a final disposition."

The parties complied with the order. They met and conferred on March 20, 2013. Counsel then prepared the required joint report

and submitted it on April 8, 2013.[3]  The 28-page report addressed the issues specified in the court's February 15 order, plus five additional points the court specified when the cases were related on March 4, 2013.  With respect to the voluntary exchange of documents, the report stated that, subject to the court's entry of an appropriate protective order, the parties agreed on March 20 "to a voluntary exchange of certain materials."[4]  On the issue of a target trial date, plaintiffs stated that they would be seeking to certify one or more classes and would "file such motions within 12 months of discovery being opened," and "trial could then occur within twelve months of such motion practice being resolved."  (On the topic of a discovery cut-off date, plaintiffs stated they "anticipate that they can complete sufficient discovery within twelve months after the discovery stay is lifted to move for class certification.")

### 3.  The Substitution of Plaintiffs

Mr. Needham died on October 25, 2013, and on November 26, 2013, a first amended complaint substituted Larco Productions, Inc. and Michael Elias as named plaintiffs.  The parties agree that the five-year statute was tolled during this 32-day period, so the

---

[3]     When we refer to "defendants" (in the plural) in this opinion, the term includes the defendants in the related cases.

[4]     "Specifically, defendants agreed to voluntarily produce to plaintiffs, subject to the attorney-client and other applicable privileges, the contract negotiation files, participation statements, and any audit reports or settlement agreements related to the named plaintiffs.  Plaintiffs agreed [to] make a good faith effort to collect from their present and former representatives and to voluntarily produce documents related to the subject contracts, including negotiation files, participation statements, and any audit reports or settlement agreement related to the named plaintiffs."

7

earliest date on which the five-year statute could have run was March 2, 2018.

**4.      Further Proceedings**

Following is a general description of various proceedings that took place as the case moved toward the class certification motion, as well as events after that motion.

**a.      April 16, 2013 – July 3, 2017**

December 2013:  The parties had agreed to a discovery procedure by December 2013.  (At a status conference on December 3, 2013, the court also ruled that merits-based discovery was not permitted.)  The parties selected a random sampling of 25 motion pictures for document production by defendant, which would form a basis for plaintiffs' class certification motion.  The parties refer to this as the *Pioneer* sample of films; notice was issued to putative class members under *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360 (*Pioneer*).  Disputes over the *Pioneer* notice were finally resolved, and the court approved dissemination of the notice on May 14, 2014.

May 2015:  Defendant eventually produced documents related to the *Pioneer* sample on a rolling basis, with its final production on May 29, 2015, by which time it had produced over 69,000 pages of documents.

July 2015:  In a joint status conference report dated July 30, plaintiffs stated they anticipated taking depositions "and being able to file their motions . . . within 180 days after the last *Pioneer* documents are received."[5]  They also reported they had proposed to

---

[5]      After a production in May 2015, the parties conferred over additional documents plaintiffs sought.  Defendant conducted additional searches and made a supplemental production later in May, and in July 2015 informed plaintiffs it had produced all the additional documents it was able to locate.  Thus, in July 2015,

the studios that they would move for class certification "on the information and documents produced in discovery to date," but this was subject to the caveat that defendants would oppose class certification "on the documents and information disclosed relating to the named Plaintiffs and the films included in the 25 Film Sample, only." Defendants did not agree they were confined to the existing discovery record in opposing class certification. Defendants anticipated needing about six months from the date of filing of plaintiffs' motion to complete discovery necessary for their oppositions.

August 2015: At a hearing on August 27, plaintiffs' counsel told the court plaintiffs would be prepared to file their class certification motion as to defendant "within six months from today." The court then set the deadline for February 26, 2016.

November 2015: On November 23, the court ordered plaintiffs to file the class certification motions by April 29, 2016. (Other defendants (Fox, Paramount and Sony) wanted an extension until that date, and no one objected. Defendant's counsel explained: "Your Honor, just so that we're clear, what we are doing in this – what we have all agreed to is the Warner Bros. motion that was set for [February 26, 2016] is now being pushed back so they are all on the same schedule.")

April 2016: On April 13, the parties stipulated to extend the deadline to July 28, 2016. (The stipulation states that plaintiffs – "in order to conclude discovery pertaining to class certification issues prior to filing the Motion" – requested, and defendant did not oppose, the 90-day extension. The stipulation also stated the parties in the Fox and Sony cases had stipulated to staying those cases through July 31, 2016, to pursue settlement discussions, so

plaintiffs planned to file their class certification motion by January 2016.

this extension would not "impact the other actions" or "the Court's attempt to have all of the Motions for Class Certification filed on the same date.")

May – June 2016: E-mail correspondence in May and June 2016 refers to scheduling and re-scheduling of the depositions of defendant's personnel, including dates beyond the July 28 deadline for the class certification motion, for which the parties blamed each other.

July 2016: At an informal discovery hearing on July 1, defense counsel suggested that all counsel (for plaintiffs, defendant, Fox and Sony) confer and suggest a date for plaintiffs to file their motion "in all of the cases like we had originally contemplated." Plaintiffs' counsel agreed with that suggestion, saying that "we have to . . . get Fox and Sony back on track," and referring to "a reasonable schedule to allow the discovery to occur with Fox and Sony . . . and then to have a filing date for all three of the motions for class certification."

August 2016: On August 10, the parties submitted a joint report agreeing plaintiffs' deadline for the three motions for class certification would be extended for six months to January 30, 2017. One reason cited was that plaintiffs "require[d] the additional time to complete discovery, including deposition discovery from [defendant] and discovery that, in the case of Fox and Sony, was held in abeyance while settlement discussions continued." The court ordered the January 30, 2017 deadline.

October 2016: On October 28, plaintiffs stated in a joint report that they intended to file their motion for class certification as to defendant by the January 30, 2017 deadline. (They stated an intention to do so as to Sony and Fox also, but reserved the right to seek additional time if the parties were unable to agree on a

10

settlement and if there were discovery disputes or unexpected delays in the discovery process.)

November 2016: On November 4, plaintiffs in the related cases proposed an extension of the deadline as to Sony and Fox for an additional 90 days, because those parties had reached a tentative settlement. Counsel for plaintiffs told the court that as to defendant, plaintiffs "should be able to file by the current deadline." Defendant suggested the motions continue to be filed simultaneously, and plaintiffs agreed that doing so "made sense from the Plaintiffs' perspective." The deadline was thus extended from January 30 to May 1, 2017.

April 2017: In early April, plaintiffs asked defendant to agree to an extension to July 1, 2017. Defendant informed plaintiffs it would not agree to any extension, but would not oppose it either. On April 13, 2017, plaintiffs filed an ex parte application to extend the deadline. They did so because the parties in the Fox case had agreed to extend the deadline in that case to July 1 "in order to continue with settlement discussions." Plaintiffs cited the previous efforts "to maintain a parallel litigation schedule and class certification schedule." Plaintiffs stated that "[t]he parties, and this Court, will suffer irreparable harm if the deadline . . . is not extended to July 1, 2017, because the pattern of uniformity will be broken and the duplication of work and expenditure of needless resources which to date has sought to be, and has been, avoided, will be lost." The trial court granted the application.

**b.      July 3, 2017 – March 2, 2018**

July 2017: Plaintiffs filed their motion for class certification on July 3, 2017 (July 1 was a Saturday). As evidentiary support, plaintiffs relied "on approximately 60 participations contracts that had been produced to them by [defendant] by May 2015," and also presented deposition testimony from various representatives of

11

defendant.**6** "[B]ased upon the agreement of the parties," the court granted defendant until January 15, 2018, to file opposition to class certification, and gave plaintiffs until March 15, 2018, to reply. The court set the hearing on class certification for April 18, 2018. (Plaintiffs point out that defendant proposed that schedule, "which happened to be after March 2, 2018, the date on which [defendant] now contends the Five-Year-Statute expired.")

August – September 2017: Defendant sought documents from plaintiffs, and from studio defendants in the related cases, asserting the documents were relevant to its opposition to the class certification motion. Plaintiffs objected on the ground, among others, that the discovery was directed to the merits and merits discovery should be taken after class certification.

November 2017: On November 14, 2017, the court granted plaintiffs' motion to quash the discovery, and denied defendant's motion to compel. The ruling was "without prejudice to defendant Warner Bros. seeking the documents to defend against the merits of the case." As plaintiffs tell us, the court "again [found] that the discovery sought . . . encompassed issues related to the merits and was not permitted at this stage of the litigation." (As early as December 2013 and April 2014, the court had stated that "discovery at this point [April 2014] is limited to class issues.")

---

**6** According to plaintiffs, the "PMQ depositions" of defendant began on October 25, 2016, and ended on January 17, 2017. Defendant says the depositions occurred between October 25 and December 20, 2016, "with one deposition completed on January 17, 2017." In their return, plaintiffs admit the May 1, 2017 deadline was nearly five months after plaintiffs completed PMQ depositions of defendant.

12

The parties agree that, before January 2018, plaintiffs never mentioned the five-year rule to defendant or the court; nor did defendant raise the issue.

**5. The Motion To Dismiss and the Motion for Trial Preference**

On March 2, 2018, defendant filed its motion to dismiss, contending the five-year deadline expired that day, or in the alternative that the case could not be brought to trial by a date that included the 43-day initial stay (by April 16, 2018). On the same day (March 2), plaintiffs filed a motion for an order finding the five-year deadline was extended, or in the alternative granting plaintiffs "preference for trial immediately."

The trial court heard both motions on March 26, 2018.

**6. The Trial Court's Ruling**

The court denied defendant's motion to dismiss and granted plaintiffs' motion for trial preference. Among the court's conclusions were these.

First, the court concluded the five-year statute would expire on April 16, 2018, because of two tolling periods.

The 43-day initial stay came within section 583.340(b), excluding time during which "[p]rosecution or trial of the action was stayed or enjoined." The court explained that "plaintiff could not advance the case, could not even require the defendant to answer the complaint. There was no way a case could be at issue or take discovery or any of the normal activities incurred during litigation." "[O]bviously, the case is not even advancing if the pleadings are not at issue."

In addition, the court found the five-year statute was tolled for 32 days under section 583.340, subdivision (c) (excluding time when bringing the action to trial was "impossible, impracticable, or futile") (hereafter, section 583.340(c)). This was the time between

13

the death of the original plaintiff and the substitution of present plaintiffs. The court observed these were "extraordinary circumstances beyond the control of the parties," and "it was impossible and impractical for plaintiff to pursue the action without a client, without a plaintiff in this case."

Second, the court rejected plaintiffs' claims that "at least 1,035 days" should also be excluded from the computation on the ground it was "impossible, impracticable, or futile" to bring the action to trial.

Specifically, the court rejected plaintiffs' claim the statute should be tolled for 542 days based on identification of the *Pioneer* sample and the related production of documents. The court observed the "simple process regarding the *Pioneer* notice . . . is typical in the complex case," and the *Pioneer* production "occurred between April 2014 and May 2015, over three years before the five-year deadline."

The court also rejected plaintiffs' claim for exclusion of 493 days based on "the parties' desire to maintain a parallel track with the related cases." The court concluded plaintiffs "did not establish they were faced with impossible or impractical choices between prosecuting the case and tracking the other cases. [¶] The fact that defendant's counsel [*sic*] chose to simultaneously track related actions, even though the court was agreeable to that and thinks it was appropriate, but that does not [a]ffect the running of the five-year statute."

Third, the court rejected plaintiffs' contention that equitable estoppel precluded defendant from arguing the case should be dismissed. (The reasons plaintiffs gave included that defendant "agreed to, and even advocated for, delay," promoting postponements of the class certification filing deadline so the action could proceed on the same schedule as the related cases, and

14

proposing a deadline of more than six months for its opposition to the motion.) The court reasoned:

"Equitable estoppel requires a party invoking estoppel to exercise reasonable diligence to ensure a reasonable case be brought to trial [within] the statutory period. Insofar as the class certification goes, the court does not believe that the reasonable diligence has been exercised with the certification earlier, and that does not justify or delay [*sic*] the tolling of the statute."

Fourth, the court "grant[ed] the motion of the plaintiff for trial preference and set the case for trial immediately." The court set both the hearing on class certification and the trial for April 10, 2018. The court ordered "all the status conference documents . . . to be filed with the court no later than April 2nd." The court continued:

"[T]hat includes the statement to be read to the jury, the exhibit list, joint exhibit list, joint statement to be read to the jury, joint witness list, joint jury instruction and joint verdict form. [¶] I have not yet determined the order of the trial, whether we would proceed with a non-jury phase of the trial of unfair competition before the other phase of the trial, but still would be under consideration. [¶] But the trial will be set to proceed forthwith on April 10 at 9:00 a.m. . . . [¶] . . . [¶] . . . As far as counsel is concerned about discovery, all discovery is opened."

Two days later, on March 28, 2018, the court granted defendant's ex parte application and stayed the case until the later of April 30, 2018, or this court's ruling on defendant's writ petition for review of the trial court's orders.

7.    **Defendant's Writ Petition**

Defendant filed its writ petition on April 2, 2018, seeking dismissal of the lawsuit and a written decision "clarifying that

15

proceeding with the lawsuit would violate the five-year rule and that trial preference was improperly granted."

We issued an order to show cause and set dates for a written return and reply. Our order directed the parties to address seven questions, in addition to any other issues they wished to address. These questions were whether the trial court erred in refusing to dismiss the case under the five-year statute; what circumstances tolled the five-year period; whether the court found reasonable diligence and excusable delay; whether the court erred in granting trial preference; the scope of the trial that was set for April 10, 2018; whether defendant's procedural rights were violated by setting trial despite no hearing on class certification and no merits discovery; and whether the court erred in deciding to empanel a jury before deciding class certification in view of *Fireside Bank*.

As indicated at the outset, we now grant defendant's writ petition.

## DISCUSSION

### 1. Dismissal Under the Five-year Statute

#### a. The applicable law

We reiterate the applicable statutory rules for tolling the five-year period within which an action must be brought to trial under section 583.310. The time during which "[p]rosecution or trial of the action was stayed or enjoined" is excluded from the computation. (§ 583.340(b).) And, the time during which "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile" is also excluded. (§ 583.340(c).)

The Supreme Court explained these tolling provisions, first in *Bruns* and then in *Gaines*. *Bruns* tells us that section 583.340(b) "contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which all the proceedings in an action are stayed."

16

(*Bruns, supra,* 51 Cal.4th at p. 726; see also *Gaines, supra,* 62 Cal.4th at p. 1087 ["A complete stay will operate to automatically toll the five-year period."].) Section 583.340(c) "gives the trial court discretion to exclude additional periods, including periods when partial stays were in place, when the court concludes that bringing the action to trial was 'impossible, impracticable, or futile.' " (*Bruns,* at p. 726.)

*Bruns* addressed "whether a stay of the 'prosecution' of the action . . . includes a stay of specific proceedings, such as a stay of discovery, while other aspects of the action may go forward." (*Bruns, supra,* 51 Cal.4th at pp. 721-722.) The court rejected that proposition, concluding "the prosecution of an action is stayed under subdivision (b) only when the stay encompasses *all* proceedings in the action." (*Id.* at p. 722.) Section 583.340(b) "governs only complete stays that are 'used to stop the prosecution of the action altogether.' " (*Bruns,* at p. 730; see also *Gaines, supra,* 62 Cal.4th at p. 1094 [" 'The term "prosecution" is sufficiently comprehensive to include every step in an action from its commencement to its final determination.' "].]

In this case, the question is whether an order that specifically stays "any responsive pleadings" and "outstanding discovery requests" – but requires the parties to do many other things during the same period – is a "complete stay[]" that " 'stop[s] the prosecution of the action altogether.' " Our answer, informed by the principles stated in *Bruns* and *Gaines*, is "no."

As in *Gaines*, "[w]e review the question de novo because it does not hinge on the resolution of factual questions concerning credibility of extrinsic evidence." (*Gaines, supra,* 62 Cal.4th at p. 1092.)

**b.     Contentions and conclusions**

Plaintiffs contend the stay of responsive pleadings and discovery "halt[ed] prosecution of the case altogether."  The legal support plaintiffs offer for this conclusion consists, in its entirety, of (1) distinguishing the facts in *Gaines* from the facts here, and (2) pointing to a sample initial status conference order available on the superior court's website, apparently updated in April 2015, that refers to section 583.310.[7]  Neither point is persuasive.

The *Gaines* case involved an order "entered pursuant to the parties' agreement" that struck the trial date "and 'stayed' the proceedings while the parties engaged in mediation and completed all outstanding discovery."  (*Gaines, supra,* 62 Cal.4th at p. 1087.)  The court found, under section 583.340(b), both that the order did not constitute "a stay of the 'trial of the action' " (*Gaines,* at p. 1091), and that it "did not effect a complete stay of the prosecution of the action" (*id.* at p. 1087).  On the first point, the court found the order effected a stipulated continuance of the trial rather than a stay.  (*Id.* at p. 1093; see *id.* at p. 1092 ["The long-standing judicial understanding of the term 'stay' in the context of the five-year statute is that it refers to those postponements that freeze a proceeding for an indefinite period, until the occurrence of an event that is usually extrinsic to the litigation and beyond the plaintiff's control."].)

On the second point, relying on *Bruns*, the court concluded the order did not completely stay prosecution of the action.  This was because the order required the parties to comply with outstanding written discovery, and so "did not ' "stop the

---

[7]     Section 583.310 states the general rule that "[a]n action shall be brought to trial within five years after the action is commenced against the defendant."

18

prosecution of the action altogether." ' " (*Gaines, supra,* 62 Cal.4th at p. 1094.) In addition, the submission of the action to mediation "constituted a 'step in [the] action' . . . within the meaning of section 583.340(b) and *Bruns.*"[8] (*Id.* at p. 1095, citation omitted.)

The *Gaines* facts are, of course, different from the facts in this case. But *Gaines* is merely one application of the rule. Nothing in *Gaines* confines, limits or contradicts the fundamental principle stated in *Bruns*: that section 583.340(b) "governs only complete stays that are 'used to stop the prosecution of the action altogether.' " (*Bruns, supra,* 51 Cal.4th at p. 730.) We find it

---

[8] *Gaines* further held the order did not create a "circumstance of impracticability" under section 583.340(c). (*Gaines, supra,* 62 Cal.4th at p. 1087.) This was because "plaintiff agreed to [the order], remained in control of the circumstances, and made meaningful progress towards resolving the case during the stay period." (*Ibid.*)

In this case, no issue of impossibility, impracticability or futility exists with respect to the 43-day stay. Plaintiffs do not contend otherwise, nor could they; the existence of circumstances making it impracticable to "[b]ring[] the action to trial, for any other reason" (§ 583.340(c)), has no apparent application when a lawsuit has just begun. (See *Gaines, supra,* 62 Cal.4th at p. 1101 ["It would thus be illusory to ask if it was impracticable for [the plaintiff] *to try the case* during the period of the stay because the posture of the case would not have allowed for such a result."].) And as *Bruns* tells us, "[t]he effect of a partial stay . . . can vary from stay to stay and from case to case. A partial stay might, or might not, make it 'impossible, impracticable, or futile' to bring the action to trial. . . . [W]hen the effect of a partial stay is raised by a plaintiff under section 583.340, the trial court must determine whether or not subdivision (c) applies to that partial stay." (*Bruns, supra,* 51 Cal.4th at p. 726.) Plaintiffs here did not raise any such claim with respect to the 43-day stay.

19

impossible to conclude that an order requiring the parties to engage in significant litigation-related activities can nevertheless be considered to have stopped prosecution of the case altogether. As we have seen, the parties met and conferred on March 20, 2013; agreed to the exchange of various documents (see fn. 4, *ante*); prepared the joint report discussing numerous topics; and submitted the report to the court on April 8, 2013. These are significant litigation activities that occurred while other litigation activities (responsive pleadings and discovery) were stayed.

Equally impossible is a conclusion that this initial stage of the litigation, during which the parties are compelled to focus on case management issues, is nevertheless not a " 'step in [the] action' " (*Gaines, supra,* 62 Cal.4th at p. 1095). On the contrary, it seems to us this period in the litigation is a step that contributes significantly to the advancement of a complex action to eventual resolution. The stay of responsive pleadings and formal discovery during this time effectively facilitates the parties' focus on case management issues, including multiple issues concerning how discovery is to be conducted. Plainly, this is a step – an important step – in the action. Plaintiffs have offered us no basis to conclude otherwise.

Instead, plaintiffs refer us to the form of an initial status conference order posted on the website of the Los Angeles Superior Court and denominated "4/1/15 SAMPLE." (<http://www.lacourt.org/division/civil/pdf/InitialStatusConferenceOrder(ComplexLitigationProgram).pdf> [as of Nov. 14, 2018].) This sample form contains much the same language as the order entered in this case, and it has two additions tangentially pertinent to plaintiffs' argument. According to this form of order, one of the topics that the joint initial status conference report must include is: "Whether the parties are prepared to stipulate that discovery and/or

pleading stays entered by the Court for case management purposes shall not be considered in determining the statutory period for bringing the case to trial under Code of Civil Procedure Section 583.310." (*Id.*, at p. 4, item 10.)  The form of order also provides:  "Hereafter, all management stays, including stays of discovery issued by the Court, shall not be considered as a stay per Code of Civil Procedure section 583.310 unless specifically ordered by the Court."[9]  (*Id.*, at p. 5.)

We do not see how this order would assist plaintiffs, even if it had been entered in this proceeding, which it was not.  It is a different (form of) order, and cannot supersede or otherwise affect an actual order made two years earlier.  But even more to the point, no matter what a sample order may say, the superior court cannot declare whether or not the five-year statute is tolled in any way other than in conformance with law.  If, as we have concluded, an order has not effected a complete stay of proceedings, a trial court's declaration otherwise changes nothing.

In sum, the order imposing a 43-day stay of responsive pleadings and formal discovery was not "a complete stay ' "used to stop the prosecution of the action altogether," ' "and "[s]ection 583.340(b) is therefore inapplicable." (*Gaines, supra,* 62 Cal.4th at p. 1097.)  Absent any other basis for tolling the five-year statute for those 43 days – and plaintiffs suggest none – the five-year period ended on March 2, 2018, and dismissal of the action was mandatory.

---

[9]     Plaintiffs rely only on the second sentence quoted in the text, and do not mention the first.  Neither provision appears in the sample order cited by plaintiffs that is an exhibit in this case.

## 2. The Trial Preference Ruling

Defendant's writ petition asserts a second basis for concluding the trial court was required to dismiss plaintiffs' action under the five-year statute. We agree with defendant that, even if the trial court was correct in concluding the five-year statute would not expire until April 16, 2018, its order granting trial preference and advancing the trial date to April 10 was a manifest abuse of discretion.

Several principles apply when we consider the propriety of trial preference in the context of a class action. In this case, in addition to its failure to apply the general factors that determine whether trial preference is appropriate, the trial court did not consider two important legal rules that apply to putative class actions. These rules, together with the court's own findings on plaintiffs' lack of reasonable diligence, require the conclusion that granting trial preference was an abuse of discretion.

### a. *Fireside Bank*

*Fireside Bank* instructs that ordinarily courts should not resolve the merits in a putative class action before class certification and notice issues, without compelling justification. (*Fireside Bank, supra,* 40 Cal.4th at p. 1083.) The reason for the *Fireside Bank* rule is the need to protect against the harms of "one-way intervention." (*Ibid.*) One-way intervention occurs when "not-yet-bound absent plaintiffs may elect to stay in a class after favorable merits rulings but opt out after unfavorable ones." (*Id.* at p. 1074; see *id.* at p. 1083 ["in dicta we have gone so far as to attribute to defendants a due process right to avoid one-way intervention"].)

*Fireside Bank* summarized several rules "governing the parties' and trial court's orderly conduct of putative class action cases." (*Fireside Bank, supra,* 40 Cal.4th at p. 1083.) These are:

"First, a defendant must actively preserve its protection against one-way intervention by objecting.  If it fails to timely object, or affirmatively seeks resolution of the merits before certification, it will be deemed to have waived its rights.  [Citations.]  Second, the plaintiffs should seek certification before moving for any resolution of the merits.  [Citation.]  If they seek certification after seeking resolution of the merits then, in the absence of a defense waiver, they must demonstrate changed circumstances or other good cause justifying the belated motion before the trial court may consider it.  [Citation.]  Third, though trial courts generally have broad discretion to manage and order class affairs, in the absence of a defense waiver they should not resolve the merits in a putative class action case before class certification and notice issues absent a compelling justification for doing so."  (*Fireside Bank, supra,* 40 Cal.4th at p. 1083, fn. omitted.)

Plaintiffs agree that these are the rules.  Their principal contention is that *Fireside Bank* is inapplicable here because defendant "unquestionably waived [its] *Fireside Bank* rights when it sought to file, and did file on June 6, 2014, a dispositive motion for summary adjudication."  We reject this claim.

Plaintiffs did not raise this contention in the trial court – and indeed, told the trial court in its motion for trial preference that without a class certification decision, it was "impossible for Plaintiffs to proceed with a trial as to the claims of the class."  And at the hearing, when the court asked plaintiffs' counsel whether starting a trial before the notice period "would affect the defendant's rights under *Fireside Bank,*" plaintiffs' counsel replied: "I don't see how, Your Honor.  If we start trial before, we're starting it as an individual case because Your Honor has yet to certify a class, so I don't see how that would impinge upon *Fireside Bank* and

23

their right on one-way intervention.  I just don't."  There was no mention of waiver.

In any event, the claim that defendant waived its *Fireside Bank* rights is inconsistent with the record and with the law.

The record does show, as plaintiffs assert, that at a hearing on June 14, 2013, in a discussion of summary judgment motions, the court said that if defendant filed a summary judgment motion, "it's only going to apply to the named plaintiffs who are in the lawsuit now, not to other members of the class," and "obviously there's no res judicata effect on anybody else."  Defense counsel replied:  "We understand that, Your Honor.  And we are willing to waive our *Fireside Bank* rights in this case because we think that it's important –  [¶]  . . .  [¶]  . . . And so . . . I think it really makes sense to deal with these individual plaintiff issues first."  Based on that exchange, plaintiffs now say that defendant "waived its rights under *Fireside Bank* five years ago."  But the record also shows that defendant's waiver was related to a single cause of action.  Thus:

When plaintiffs filed a notice of ruling for the hearing at which the above exchange occurred, they included a paragraph on the deadline for filing the motions for summary judgment or adjudication, and the limited discovery that was authorized relating to the issues defendants intended to present in support of their motions.  The notice said nothing about the waiver.  Defendants then filed a counter-notice of ruling correcting that paragraph.  The counter-notice stated:

> "Based on Defendants' willingness to waive their *Fireside Bank* protections ***as to certain claims*** if they prevail prior to certification of a class, the Court granted Defendants permission to file early summary judgment or summary adjudication motions ***against certain of the named Plaintiffs' claims,*** without waiver of Defendants' right to

24

file summary judgment or adjudication motions later in the case, either before or after a decision on class certification." (Boldface & italics added.)

The record shows no objection by plaintiffs to defendants' corrected notice of ruling.

Defendant then filed a summary adjudication motion addressed to plaintiffs' cause of action for conversion, and the trial court granted the motion and dismissed that cause of action on October 14, 2014.

Waiver is the intentional relinquishment or abandonment of a known right, and " ' "always rests upon intent." ' " (*Lynch v. California Coastal Commission* (2017) 3 Cal.5th 470, 475.) The record plainly shows defendant had no intention of waiving its *Fireside Bank* rights with respect to anything but the claims on which it sought summary adjudication.

Moreover, plaintiffs misread *Fireside Bank* when they suggest that a limited waiver of the sort just described somehow amounts to an all-purpose waiver of a defendant's right to protection against one-way intervention for all class claims. *Fireside Bank* did not say or suggest anything of the sort. Such a construction makes no sense; it is contrary to the very purpose of the rules against one-way intervention, which protect defendants from the no-win situation that exists when class members can opt out if a ruling on the merits is favorable to them and remain in the class if it is not. *Fireside Bank* itself makes the point clear, repeatedly, in its discussion of the scope of the rule. Thus, "the scope of any rule should be coextensive with its rationale," and the scope of the *Fireside Bank* principle "depends precisely on the extent to which the ruling gives rise to concerns about one-way intervention." (*Fireside Bank, supra,* 40 Cal.4th at p. 1084.) "What matters is the extent to which a [summary adjudication or other] motion impacts the principal

25

legal issue or issues in a case and thereby poses for the defendants the risk of one-way intervention depending on its outcome." (*Id.* at p. 1086.)

Here, defendant's motion for summary adjudication of plaintiffs' conversion claim did not "impact[] the principal legal issue" – whether defendant is obligated to account to and credit profit participants based on 100 percent rather than 20 percent of home video revenue. Plaintiffs say this is "the central issue in the case." Defendant has never sought a ruling on the merits of this issue, or any issue other than plaintiffs' conversion claim.

A ruling on the merits of that central issue in advance of class certification would plainly create an untenable risk of one-way intervention. Successfully seeking summary adjudication on a collateral claim did not waive defendant's *Fireside Bank* right to avoid one-way intervention with respect to pending class claims.

Next, plaintiffs contend defendant is deemed to have waived its *Fireside Bank* rights by "fail[ing] to timely object." (*Fireside Bank, supra,* 40 Cal.4th at p. 1083.) Plaintiffs observe that defendant participated in the scheduling of the class certification motion and "never objected nor raised the [*Fireside Bank*] issue before filing its motion to dismiss."

This claim is meritless. Of course a defendant "must actively preserve its protection against one-way intervention by objecting," and "[i]f it fails to timely object . . . it will be deemed to have waived its rights." (*Fireside Bank, supra,* 40 Cal.4th at p. 1083.) But we know of no basis to conclude that a defendant must "raise the issue" at any time before a plaintiff actually seeks a resolution of the merits of the case. That did not happen until plaintiffs filed their motion for trial preference.

The only authority plaintiffs cite is *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362. It does not help

26

them in the slightest.  In that case, the plaintiff filed a motion for class certification and a motion for partial summary judgment of affirmative defenses that would "resolve the principal legal issue presented by the case." (*Id.* at p. 369.)  The defendant "simply contested the merits of the [partial summary judgment] motion," and did not claim it was premature or should be postponed until absent class members had been notified of the action. (*Ibid.*)  The trial court granted the partial summary judgment motion and certified the case as a class action. (*Id.* at p. 370.)  Then the defendant sought a writ, among other things to vacate the order granting partial summary judgment. (*Id.* at p. 371.)  The Court of Appeal held that "[b]y failing to object to the trial court's determination of plaintiff's motion for partial summary judgment prior to class notification, defendant waived any right it may have had to postpone such a ruling until after such notice was provided." (*Ibid.*, italics omitted.)  Obviously, in the *Civil Service* case there *was* a motion by the plaintiff for resolution on the merits to which the defendant failed to object.  That did not happen here.

Plaintiffs' final contention on this point is that there is a "compelling justification" for a different result because "the trial plan envisioned would not have resulted in one-way intervention." As we discuss in part c., *post*, the applicable legal authorities do not permit the "trial plan envisioned" under the circumstances here, and accordingly plaintiffs' assertion is meritless.

**b.**   ***Massey***

The interplay between the five-year mandatory dismissal statute and the rule against one-way intervention – a rule that has existed in the courts of appeal since the 1970's (*Fireside Bank, supra,* 40 Cal.4th at pp. 1079-1080) – arose and was resolved in the *Massey* case.

27

In *Massey*, the action had been pending for more than four years and 10 months and a trial date had been set. At the time of the trial court's order dismissing the class aspects of the case, there had been "no determination as to the class aspect of the case; [and] no notice to members of the class agreed upon, determined or given . . . ." (*Massey, supra,* 56 Cal.App.3d at p. 32.) The trial court order noted that " 'no meaningful or effective notice to the members of the class prior to trial can be given.' " (*Ibid.*) The Court of Appeal upheld the dismissal, stating:

"It is quite true that the full five-year period had not finally expired on . . . the date of the order appealed from. But it is undisputed that the 34 days remaining of that period was grossly inadequate for the giving of notice to the large and geographically scattered class for which plaintiff purports to act and to allow even a minimally reasonable period for exercise by the class members of their options. To go through the mere formality of fixing notice at that late date would have been a useless act, since dismissal, 34 days later and before completion of any reasonable notice period, would have been mandatory. Hence we conclude that dismissal of the class aspect of the action was proper." (*Massey, supra,* 56 Cal.App.3d at p. 33, fn. omitted.)

Here, the trial court calculated that the five-year period was to expire on April 16, 2018. So, when the court's March 26, 2018 ruling set the matter for trial, only 21 days remained in the five years. Notification to class members with a reasonable time to exercise their options, before expiration of the five-year period, was plainly an impossibility.

The trial court ignored *Massey* entirely, despite defendant's contention, in briefing and at the hearing, that it was directly applicable. Plaintiffs effectively do so as well.

In their return, plaintiffs do not dispute the *Massey* holding, but say *Massey* is distinguishable because they were reasonably diligent in seeking class certification and the plaintiff in *Massey* was not.[10] This assertion is both irrelevant and contrary to fact. *Massey* did not address reasonable diligence or the lack thereof; it involved only the adequacy of the time remaining in the five-year period to give notice to the class and allow class members to exercise their options. Moreover, the distinction would fail in any event, as the trial court expressly found plaintiffs were *not* reasonably diligent, as we discuss in part d., *post*.

In short, we are presented with no reason to disagree with the holding in *Massey*. Absent compelling justification (*Fireside Bank, supra,* 40 Cal.4th at p. 1083), a class action must be dismissed under the five-year statute if the class issues are not decided with enough time for notice to the class and a minimally reasonable period for class members to exercise their options before trial begins. The 21 days remaining in this case before the posited date for expiration of the five-year period is even less than the 34 days that were "grossly inadequate" in *Massey*.

### c.	*Hartman*

Plaintiffs try to avoid these legal conclusions by contending the *Fireside Bank* rule does not apply because "the trial plan envisioned would not have resulted in one-way intervention." According to plaintiffs, the trial court "has procedural mechanisms

---

[10]	Plaintiffs observe that *Massey* did not involve "multiple related actions" that the parties sought to keep on track; the defendant in *Massey* moved for a class determination first and the plaintiff did so only after the defendant moved for dismissal of the class action aspect of the action; and in *Massey* the plaintiff requested a delay in the hearing.

29

at its disposal to provide more time for the parties' preparation for a full trial." They suggest the following.

Plaintiffs plan to move in limine to bifurcate the trial and request a bench trial on their declaratory judgment claim, which they say "focuses on the central issue in the case." They hypothesize that the trial court then has two options: it can swear the first witness and then grant a continuance so the class can be certified and the matter "completely tried by jury at a later time on the merits." For this point, plaintiffs cite *Hartman, supra,* 30 Cal.3d 762. "In the alternative, the trial court could actually proceed to try the claim for declaratory judgment, and continue the remaining phases of the trial."

The problem with these proposals is twofold.

First, the trial court had, or expressed, no idea of the scope of the trial it ordered to begin on April 10, and indeed stated that it had not determined the order of the trial, "whether we would proceed with a non-jury phase . . . before the other phase." But the court ordered the parties to file, within one week, the statement to be read to the jury, the exhibit list, the witness list, the jury instructions, and the verdict form. This on its face is manifestly unfair to defendant, who has had no opportunity to conduct merits discovery, consider expert witnesses, decide whether to move for summary judgment, or anything else. Indeed, neither party had any idea what sort of "trial" they would confront on April 10.

Second, there is no legal basis under which any of plaintiffs' proposals for commencing trial – only in order to continue it for the many months or years that will necessarily be consumed before the parties are actually ready for trial – can stand. Certainly, the trial court cannot "actually proceed to try the claim for declaratory judgment" with no opportunity for merits discovery. And the only legal precedent permitting "the pro forma commencement of the

30

trial" in order to "preserv[e] the right to a trial on the merits" in the face of the five-year statute – *Hartman* – does not apply to the circumstances in this case.

*Hartman* did indeed approve a procedure for beginning a trial and then immediately postponing it to avoid the five-year statute. *Hartman* pointed out that "from time immemorial charades and fictions have played a vital role in helping courts over, around and under legal roadblocks which they were not quite ready to assault head-on." (*Hartman, supra,* 30 Cal.3d at p. 766; *ibid.* ["the pro forma commencement of the trial . . . plays a vital part in preserving the right to a trial on the merits"].)[11]

The cornerstone of *Hartman*, however, was that overcrowded court dockets "demand safety valves against unjust dismissals." (*Hartman, supra,* 30 Cal.3d at p. 766.) One such safety valve was

---

[11]     *Hartman* explains that this pro forma procedure was first suggested in *Miller & Lux, Inc. v. Superior Court* (1923) 192 Cal. 333. In that case, dismissal was mandated, but the court "suggested that if counsel had desired to avoid the bar of the statute, it would have been a very simple matter, after calling the court's attention to the situation, to have requested that one witness be sworn in the cases and then the hearing of the cases continued until a time which would be convenient for the court and the parties to the action." (*Miller & Lux,* at p. 342.) The *Miller & Lux* court made this suggestion after reciting extensive facts showing the plaintiffs were ready for trial, but orally stipulated to continuances at defense counsel's request without the necessary written stipulation. (*Id.* at pp. 335-337.) "Doubtless if objection had been made and the trial court's attention called to the fact that a further continuance would have the effect of putting the case beyond the bar of the statute, the trial court would have ordered that the cases proceed to trial or else have exacted a written stipulation from the defendants extending the time of the trial." (*Id.* at p. 342.)

"the rule that if the plaintiff has obtained a trial date within the five years and is prevented from actually going to trial because no courtroom is open, the delay is 'on the house.' " (*Ibid.*)  But, *Hartman* tells us, "the facts do not always fit [that] mold," and that is why the "pro forma commencement of the trial" was so important. (*Ibid.*)  The facts in *Hartman* demonstrated just such an "unjust dismissal[]."

In *Hartman*, the plaintiff had obtained several trial dates, but the dates were continued because no judge was available; then because defense counsel was engaged in another case; and then because of serial challenges to the assigned judge, first by the defendant and then by the plaintiff.  The final assigned trial date was 23 days before the fifth anniversary of the filing date, at which time the plaintiff's counsel was engaged in another trial that was taking ' "considerably longer' " than had been estimated.  (*Hartman, supra,* 30 Cal.3d at p. 764.)  The trial court permitted the procedure of empaneling and swearing a jury, and continuing the matter until a time convenient to the court and when the trial in which the plaintiff's counsel was then engaged would be finished.  (*Ibid.*) These were the circumstances generating *Hartman*'s conclusion the five-year statute "may be avoided by going through certain rites denoting the commencement of a trial."  (*Id.* at p. 765; see also *Central Mutual Ins. Co. v. Executive Motor Home Sales, Inc.* (1983) 143 Cal.App.3d 791, 795 ["To avoid the problems of unavailable courtroom and/or unavailable time for lengthy trial, use of the 'trial-started' fiction is available," citing *Hartman*].) [12]

---

[12]    *Hartman* also held that a "second and entirely independent reason why the dismissal was erroneous is the fact that legally five years had not elapsed since the filing of the complaint."  (*Hartman, supra,* 30 Cal.3d at p. 767.)  This was because the challenges to the assigned judge resulted in a delay of 11 months, and that time

We cannot think that *Hartman* intended this "safety valve[]" against unjust dismissals" to apply to circumstances where plaintiffs were never ready for trial, and where the court found plaintiffs did not exercise reasonable diligence in bringing the case to the point of class certification (see pt. d., *post*), a point that precedes a trial on the merits. In short, there is nothing "unjust" about a dismissal under the five-year statute in the circumstances of this case – quite the opposite. And that principle – the need for a "safety valve[] against unjust dismissal" – is, in our view, a precondition and the sine qua non for application of the *Hartman* procedure. Plaintiffs have cited no cases post-*Hartman* (or pre-*Hartman* for that matter) that suggest otherwise.

In sum, the procedure plaintiffs suggest is, under the circumstances of this case, a sham to avoid the mandatory application of the five-year dismissal rule. We see no basis in law under which we may countenance a manipulation of long-standing legal rules on the conduct of class actions to avoid the application of another long-standing legal rule: mandatory dismissal after five years.

### d. Trial preference principles

Underlying plaintiffs' opposition to application of the legal rules we have described is their insistence the trial court found they exercised reasonable diligence during the period leading up to the class certification motion, filed four and one-half years after the complaint. Both the law on reasonable diligence and the record, already described in the fact section, *ante*, show this is not so.

---

should have been disregarded, so "by any reckoning, the dismissal was premature." (*Id.* at pp. 768-769.)

33

### i. The law

The factor of reasonable diligence applies both when a trial court is considering whether to toll the five-year statute under section 583.340(c) (the impossibility, impracticality or futility exception), and when the court is considering a motion for trial preference. Thus, *Gaines* instructs that the " ' "critical factor in applying these [section 583.340(c)] exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case." ' " (*Gaines, supra,* 62 Cal.4th at p. 1100.)

Likewise, while a decision on trial preference rests in the sound discretion of the trial court, the court must consider, among other factors, "dilatory conduct by plaintiff," so that a plaintiff must "make[] some showing of excusable delay." (*Salas v. Sears Roebuck & Co.* (1986) 42 Cal.3d 342, 349, 347 (*Salas*); see *id.* at p. 347 ["although the interests of justice weigh heavily against disposing of litigation on procedural grounds – a policy we reaffirm – that policy will necessarily prevail only if a plaintiff makes some showing of excusable delay"].)[13]

### ii. The record

The record demonstrates the trial court expressly found that plaintiffs were not diligent in seeking class certification.

---

[13] See also section 36, subdivision (e) ("Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference that is supported by a showing that satisfies the court that the interests of justice will be served by granting this preference."). *Salas* tells us the discretionary standard is consistent with the legislative intent under this provision (then subdivision (d)) "to promote diligent and orderly prosecution by requiring plaintiffs to make some showing of excusable delay." (*Salas, supra,* 42 Cal.3d at p. 349.)

In the trial court, plaintiffs contended the court should add 1,035 days to the five-year rule because it was "impossible, impracticable, or futile to complete the class certification and notice process, let alone bring this action to trial." The "specific circumstances" that warranted application of that exception to the five-year rule, they argued, included the identification of and production under the *Pioneer* sample (542 days), and the parties' desire to maintain a parallel track with the related cases (493 days).

The trial court rejected both contentions. As already described, the court found the "simple process regarding the *Pioneer* notice . . . is typical in the complex case," and the *Pioneer* production occurred "over three years before the five-year deadline." And, the court stated the five-year statute should not be tolled for the 493 days plaintiffs attributed to maintaining the parallel track, stating that plaintiffs "did not establish they were faced with impossible or impractical choices between prosecuting the case and tracking the other cases." The court expressly rejected the notion that plaintiffs were diligent in seeking class certification, saying that "[i]nsofar as the class certification goes, the court does not believe that the reasonable diligence has been exercised . . . ."

### iii.    Plaintiffs' diligence claims

In their brief opposing the writ petition, plaintiffs do not argue that the trial court erred when it refused to toll the five-year statute for time spent on the *Pioneer* production or on maintaining a parallel track with the related cases.[14] Nonetheless, they argue the trial court "found reasonable diligence and excusable delay when it, first, determined that the death of the original plaintiff's

---

[14]    In response to our question as to what circumstances tolled the five-year period and for what periods of time, plaintiffs cited only the 75 days as determined by the trial court.

35

principal tolled the Five-Year Statute . . . and, second, granted Plaintiffs' motion for trial preference." They also say, in the face of the court's contrary finding but without mentioning it, that "there has been no dilatory conduct by Plaintiffs." None of these contentions has merit.

Plaintiffs are literally correct on the first point, but it does not help them. The trial court necessarily found plaintiffs exercised reasonable diligence as it applies to the 32-day period after the original plaintiff's death, and no one suggests otherwise. The court found those 32 days were excludable because "it was impossible and impractical for plaintiff to pursue the action without a client, without a plaintiff in this case."

Plaintiffs say this 32-day finding "implies a finding of reasonable diligence." Of course it does; as we have seen, reasonable diligence is the critical factor in applying the "impossible, impracticable, or futile" exceptions. (*Gaines, supra,* 62 Cal.4th at p. 1100.) But an implied finding of reasonable diligence necessarily applies to the period of the excuse, not to plaintiffs' actions throughout the case. (See *id.* at p. 1101 [referring to conditions interfering with the plaintiff's ability to move the case to trial "during the relevant period"].) Plaintiffs do not get a five-year free pass on diligence simply because it could not prosecute its case for 32 days during the first year after the complaint was filed.

Plaintiffs' second argument, on which it does not elaborate, is that the trial court's grant of trial preference itself "demonstrates that the Respondent Court found reasonable diligence." It does nothing of the sort. Plaintiffs' assertion simply begs the question. And we cannot imply a trial court finding of reasonable diligence when the trial court expressly found to the contrary.

Finally, plaintiffs assert the court's ruling on trial preference should be upheld because "there has been no dilatory conduct by

36

Plaintiffs." They say they "expended extraordinary efforts" and any delay "has been the result of the unique and complex nature of this case." They cite the *Pioneer* process; a "lengthy and exhaustive discovery process as to class issues"; and they "took the depositions of five separate persons most qualified to testify in this action."

Again, these claims are contrary to the trial court's findings. They are also unsupported in law. The *Pioneer* process, the discovery process, and depositions are ordinary incidents of complex proceedings. Just as those incidents do not demonstrate that it was "impossible, impracticable, or futile" to bring the matter to trial, they cannot demonstrate reasonable diligence prosecuting the case. (See *Gaines, supra,* 62 Cal.4th at p. 1101 [delay caused by ordinary incidents of proceedings is not within the contemplation of the section 583.340(c) exceptions; plaintiffs may not "litigate piecemeal every period, no matter how short, in which it was literally impracticable to try the case"].)[15]

---

[15]    Factors besides dilatory conduct apply when a court considers a motion for trial preference. *Salas* tells us the court "must consider the 'total picture,' . . . including the condition of the court calendar, dilatory conduct by plaintiff, prejudice to defendant of an accelerated trial date, and the likelihood of eventual mandatory dismissal if the early trial date is denied." (*Salas, supra,* 42 Cal.3d at p. 349.) But because "some showing of excusable delay" is a necessary element (*id.* at pp. 347, 349), we need not address the other elements. In any event, the other factors do not support trial preference either. There was no evidence of the "condition of the court calendar" (*id.* at p. 349) or the rights of other litigants (*id.* at p. 346), but there is no suggestion the court's calendar had anything to do with the impending expiration of the five-year period. And it is incontrovertible that there would be prejudice to defendant (see pts. 2.a., b., & c., *ante*) from an accelerated trial date, because (for one thing) no discovery on the merits had yet been permitted. Indeed, only one factor supported trial preference: "the

37

In short, nothing the court said at the hearing supported a fundamental consideration in a ruling for trial preference: that plaintiffs are required to make "some showing of excusable delay." (*Salas, supra,* 42 Cal.3d at p. 349.) The trial court's own findings demonstrate there was no such showing, and plaintiffs have made no attempt to show any lack of substantial evidence to support the trial court's conclusion. Indeed, plaintiffs ignore the court's finding entirely.

### e.     Other considerations

We end by addressing a point that plaintiffs mention many times in their brief, including in connection with their assertion of reasonable diligence, to justify the court's grant of trial preference. As they did in the trial court, they point out that defendant "advocated for postponement" of the filing deadline for the class certification motion "on at least three separate occasions in order to keep this action on the same schedule as the related cases." They point out that defendant proposed a deadline of six months for its opposition to the motion, and 60 days for plaintiffs' reply, which would be after the March 2, 2018 date on which defendant contends the five-year statute expired. They complain that defendant refused to stipulate to extend the five-year deadline, despite agreeing to and at times advocating for delay to keep the cases on the same track.

We suppose plaintiffs' repeated assertions on this point are intended to suggest, sub silencio, a claim of equitable estoppel. (While plaintiffs in their return assert equitable estoppel as a

---

likelihood of eventual mandatory dismissal if the early trial date is denied." (*Salas*, at p. 349.) That is not sufficient to sustain a motion for trial preference. If it were, the mandatory five-year dismissal statute would be rendered irrelevant.

"second affirmative defense," they do not mention equitable estoppel, or discuss the factors necessary for its application, anywhere in their brief.)  In any event, no basis exists to estop defendant from relying on the five-year dismissal rule.

First, when plaintiffs asserted equitable estoppel in the trial court, citing the same points we have just described, the trial court definitively rejected the claim.  After reciting plaintiffs' assertions about defendant's conduct,  the court stated that equitable estoppel requires the exercise of reasonable diligence to ensure a case is brought to trial within the statutory period, and plaintiffs did not exercise reasonable diligence with respect to class certification.  Again, plaintiffs do not mention this finding or assert any basis on which we could reject it.  And the record affirmatively supports it: for example, defendant's *Pioneer* production was complete by the end of May 2015, and at a hearing on August 27, 2015, plaintiffs' counsel told the court plaintiffs would be prepared to file its class certification motion as to defendant "within six months from today."

Second, *Gaines* confirms there is no legal basis for the application of equitable estoppel in this case.  *Gaines* rejected a contention that defendants who agreed to a partial stay were estopped from claiming the five-year statute was not tolled during that time.  (*Gaines, supra,* 62 Cal.4th at p. 1097.)  In *Gaines,* nothing in the communications between the parties mentioned or suggested an intent to extend the five-year period (*id.* at pp. 1098-1099), and the court found no basis for estoppel (*id.* at p. 1100). *Gaines* also tells us this:

"We have long observed that '[s]tipulations [by the parties] that merely extend the time for trial within the five-year period, absent a showing that the parties intended otherwise, will not extend the five-year period.' " (*Gaines, supra,* 62 Cal.4th at p. 1092.)  And:  "While attempts to work cooperatively are to be

39

lauded, they do not absolve litigants from the obligation to prosecute claims within the statutory guidelines. Established case law advised [the plaintiff] to seek an express stipulation from the parties that the agreed-upon postponements would extend the five-year period. [Citation.] [The plaintiff] did not do so." (*Id.* at p. 1105.) The same is true here.

### f.    Conclusion

We find the trial court's grant of trial preference under the circumstances presented to it inexplicable. The court offered no explanation at the hearing, and the factual considerations and conclusions the court stated at the hearing uniformly supported the opposite conclusion. So does the law.

## DISPOSITION

The writ petition is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order of March 26, 2018, denying petitioner's motion to dismiss the action and granting real parties' motion for trial preference, and to enter a new and different order granting petitioner's motion and dismissing the action. Costs are awarded to petitioner.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


DUNNING, J.[*]

_____

[*]    Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

40

Filed 11/20/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> LARCO PRODUCTIONS, INC., et al., <br><br> Real Parties in Interest. | B289109 <br><br> (Los Angeles County Super. Ct. No. BC500040) <br><br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matter filed on November 14, 2018, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

BIGELOW, P. J.          GRIMES, J.          DUNNING, J. *

_____

\*      Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.