[L.A. No. 31435. Feb. 11, 1982.]

MAXINE C. HARTMAN, Plaintiff and Appellant, v.
FERNANDO SANTAMARINA, Defendant and Respondent.

COUNSEL

Allan F. Grossman, Lawrence A. Chusid and Peterson & Moen for Plaintiff and Appellant.

Leonard Sacks, Harvey R. Levine, Robert E. Cartwright, Edward I. Pollock, William M. Shernoff, Stephen I. Zetterberg, Richard D. Bridgman, Sanford Gage, Arne Werchick, Victoria De Goff, Ian Herzog, Glen T. Bashore, Wylie Aitken and Ralph Drayton as Amici Curiae on behalf of Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Ronald C. Kline, Roy G. Weatherup and Eric P. Lampel for Defendant and Respondent.

OPINION

**KAUS, J.**—Plaintiff appeals from a judgment of dismissal pursuant to section 583, subdivision (b), of the Code of Civil Procedure[1]—the so-called "five-year statute." We reverse principally because the action was brought to trial within five years after it was filed. We also hold, however, that even if the case had not been brought to trial, the five years had not run when it was dismissed.

I

The complaint for medical malpractice was filed on February 7, 1974. Defendant promptly answered and an at-issue memorandum was filed on May 14, 1974. The first assigned trial date was October 20, 1975. Trial was continued, however, to February 28, 1977, plaintiff having been unable to complete the deposition of defendant. This second trial date had to be vacated because no judge was available and the court had a policy of not trailing cases from day to day. The trial was continued to October 11, 1977, when it was again continued on defendant's motion based on counsel's engagement in another case. On February 14, 1978, the continued date, the case was actually assigned for trial, but defendant challenged one judge under section 170.6 and plaintiff then challenged his replacement. No other judge was available. The court's no-trail policy was still in effect and the case was continued for 11 months to January 15, 1979—23 days from the 5th anniversary of the date of filing.

On January 15, 1979, plaintiff's counsel was engaged in another trial in Ventura County which had started on November 15, 1978, and which was taking "considerably longer" than had been estimated. He had, however, been given the day off and, suggested that, in order to avoid the impact of the five-year statute, the parties proceed to "pick a jury [and] then continue the matter to a time convenient to the court and the parties when [the] Ventura case would be finished." After some discussion, the court agreed. Twelve prospective jurors were put into the box, both sides passed for cause, the jury was sworn, and plaintiff moved for a continuance which was granted over defendant's objections. The court then discharged the jury on its own initiative.[2] The trial was continued to August 6, 1979.

---

[1] All statutory references are to the Code of Civil Procedure.

[2] It may be of technical significance that it was the court and not plaintiff who thus precipitated a mistrial. Plaintiff had merely asked for a continuance or, more precisely, a rather long recess.

On July 13, 1979, defendant filed a motion to dismiss under section 583, subdivision (b), which was eventually granted on July 30, 1979. This appeal followed the entry of a formal judgment of dismissal.

## II

■ The plain import of *Miller & Lux, Inc.* v. *Superior Court* (1923) 192 Cal. 333, 342 [219 P. 1006], is that this case was brought to trial on January 15, 1979. In *Miller & Lux* we held that under the circumstances of that case a continuance ordered on March 24, 1920, "had the effect of putting the case beyond the bar of [section 583]" and, therefore, mandating dismissal. (*Id.*, at p. 342.) We indicated, however, what procedure would have saved the day: "It may be suggested that if counsel had desired to avoid the bar of the statute, it would have been a very simple matter, after calling the court's attention to the situation, to have requested that one witness be sworn in the cases and then the hearing of the cases continued until a time which would be convenient for the court and the parties to the action." (*Id.*) *Miller & Lux* happened to be a nonjury case. If the action is set for jury trial the functional equivalent of swearing a witness is the impanelling of the jury. (*Kadota* v. *City & County of S.F.* (1958) 166 Cal.App.2d 194 [333 P.2d 75].)[3]

Defendant claims that the quoted passage from *Miller & Lux* is dictum—as it most assuredly is. (See *Adams* v. *Superior Court* (1959) 52 Cal.2d 867, 870 [345 P.2d 466].) The dictum has, however, survived almost a half century and has been accepted by the bench and bar. (See, e.g., *Clements* v. *Ragghianti* (1957) 155 Cal.App.2d 188, 191 [317 P.2d 706]; *Vecki* v. *Sorenson* (1959) 171 Cal.App.2d 390, 395 [340 P.2d 1020]; cf. *Bella Vista Dev. Co.* v. *Superior Court* (1963) 223 Cal. App.2d 603, 608 [36 Cal.Rptr. 106].) At this very moment there must be dozens of cases in which all that stands between a viable lawsuit and a mandatory dismissal is faithful compliance with this court's suggestion that the impact of the five-year statute may be avoided by going through certain rites denoting the commencement of a trial. We would be subject to legitimate criticism if we defeated reasonable reliance on *Miller and Lux* by a belated repudiation of the procedure we suggested on the ground that our suggestion was, after all, just dictum.

---

[3]In *Kadota* the jury was actually impanelled and sworn. The opinion's statement of the issue, however, implies that a jury case is brought to trial "when the parties commence the examination of prospective jurors." (*Id.*, at p. 195.)

Moreover, in 1923, the procedure suggested in *Miller & Lux* was perhaps a mere professional courtesy to comatose counsel. Apparently the calendars of most courts were reasonably current and only the most extreme Fabian tactics were likely to get plaintiff's counsel in trouble with the five-year rule. Today's overcrowded dockets, which often make it touch and go whether even the most aggressive plaintiff can get to trial within five years, demand safety valves against unjust dismissals. One, of course, is the rule that if the plaintiff has obtained a trial date within the five years and is prevented from actually going to trial because no courtroom is open, the delay is "on the house." (*Goers* v. *Superior Court* (1976) 57 Cal.App.3d 72, 75 [129 Cal.Rptr. 29].) Unfortunately, as this case shows, the facts do not always fit the *Goers* mold, and the pro forma commencement of the trial, as suggested by *Miller & Lux*, thus plays a vital part in preserving the right to a trial on the merits.

Defendant claims, however, that this court repudiated *Miller & Lux* in *Adams* v. *Superior Court, supra*, 52 Cal.2d 867. We disagree. True, in *Adams* a witness was sworn and testified, but the sole purpose of putting him on was to obtain evidence relevant to a motion for continuance, which was granted. *Adams* did no violence to *Miller & Lux* in holding that testimony elicited for the sole purpose of *not* going to trial did not amount to bringing the case to trial.

Finally, defendant suggests that the procedure of impanelling a jury just to send it home five minutes later, is a "charade" which does little credit to the public image of the courts. To this there are two answers, one short, one a bit longer. The short one is that the defendant need not insist that the charade be played out: he can, saving all his objections, stipulate that the necessary ceremonial has been observed. The long answer is that from time immemorial charades and fictions have played a vital role in helping courts over, around and under legal roadblocks which they were not quite ready to assault head-on.[4]

Two examples will suffice. First, every student of legal history is familiar with the symphony of fictions by which the action of ejectment was transformed from a remedy available only to dispossessed tenants

---

[4]Chief Justice Marshall, sitting as a circuit justice, thus described a legal fiction: "[I]t is the creature of the court, and is moulded to the purposes of justice, according to the view which its inventors have taken of its capacity to effect those purposes." (*Livingston* v. *Jefferson* (1811) 15 Fed.Cas. (No. 8411) 660, 663.)

into an action by which title to the freehold could be adjudicated.[5] Less well known but more to the point are the machinations by which the King's Bench—essentially a criminal court—usurped some of the civil jurisdiction of the Common Pleas by jailing the defendant—actually at first, fictitiously after a time, never with even a pretense of justification.[6] The obvious parallel between a "pretend" jailing to acquire jurisdiction and the "pretend" picking of a jury to keep it effective, suggests that on January 15, 1979, the jurors participated not in a charade but, rather, in a tableau in a centuries old pageant.

We therefore hold that on January 15, 1979, plaintiff brought this case to trial within the meaning of section 583, subdivision (b).

### III

■ A second and entirely independent reason why the dismissal was erroneous is the fact that legally five years had not elapsed since the filing of the complaint.

---

[5]Blackstone calls the method a "contrivance." (3 Blackstone's, Commentaries 201.) A more modern author thus ends his description: ". . . [By] Tudor times an action of ejectment was the standard method to determine ownership of land. It continued in full *charade* into the nineteenth century; . . ." (Rembar, The Law of the Land (1980) p. 210, italics added.)

[6]The procedure is described in Dowling, Materials for Legal Method (1946) chapter 2, section 2, pages 38-39: "The Court of King's Bench was established probably in the early part of the thirteenth century. It had jurisdiction over criminal cases. It also had jurisdiction over civil actions involving a breach of the peace. It had jurisdiction also over other actions brought against a person in the custody of the King's marshal of the Marshalsea Prison. It did not, however, have jurisdiction in the case of other civil actions, as for example an action of debt. By the use of a fiction it acquired such jurisdiction. If a plaintiff desired to sue a defendant for a debt in the King's Bench he might first sue him for trespass, have him arrested and committed to the Marshalsea, and thereafter the court could entertain an action of debt against him. The proceeding would be begun, not by an original writ, but by what was known as a 'bill of Middlesex,' a process directing the sheriff to arrest the defendant to answer a charge of trespass and also (ac etiam) of debt. The charge of trespass was a sufficient ground for arresting the defendant and committing him to the custody of the marshal, and the Court of King's Bench thus acquired jurisdiction to determine the question of indebtedness of the prisoner. Since the court was anxious to extend its jurisdiction, it came to be held that it was not necessary that the defendant should be actually arrested; it was held that an allegation by the plaintiff that the defendant had been arrested was sufficient and the defendant would not be permitted to deny the allegation. Thus, the Court of King's Bench acquired concurrent jurisdiction over all kinds of civil controversies except real actions. Later it came to be held that a proceeding in the court could be begun by an original writ as well as by a bill of Middlesex." A more elaborate description will be found in 3 Blackstone's, Commentaries, pages 41-43.

In *Nail* v. *Osterholm* (1970) 13 Cal.App.3d 682 [91 Cal.Rptr. 908], the case came on for trial about four years after the complaint was filed. Plaintiff challenged the trial judge pursuant to section 170.6. The challenge was allowed, but no other judge was available. The case went off calendar. It was eventually set for retrial on February 10, 1969, several months after the fifth anniversary of the date of filing—October 6, 1968. On October 15, 1968, plaintiff unsuccessfully moved to advance the trial date. On December 6, 1968, defendant's motion to dismiss under the five-year statute was granted. The Court of Appeal reversed. It pointed out that section 170.6 contains various provisions designed to minimize any delay caused by a successful challenge under that section.[7] These were, however, not followed, with the result that the plaintiff was penalized for exercising his statutory right to challenge the trial judge. The *Nail* court then harmonized the objectives of sections 170.6 and 583 by holding that "the period that the trial is held in abeyance pending the assignment of another judge *is to be disregarded* in considering a subsequent motion to dismiss." (13 Cal.App.3d at p. 686, italics added.)

Defendant attempts to distinguish *Nail* on the basis that there the delay after the section 170.6 challenge resulted in a trial setting beyond the five-year period, while here the new trial date was just within that limitation. This point, however, overlooks the language of *Nail* that the "period that the trial is held in abeyance ... is to be disregarded ...."—language which does not even hint of a condition that the period of abeyance must stretch beyond the fifth anniversary of the action.

Here the section 170.6 challenges—which, incidentally, were initiated by defendant—resulted in a delay of about 11 months. The motion to

---

[7]Section 170.6 reads in relevant part as follows: "If such motion is duly presented and such affidavit or declaration under penalty of perjury is duly filed or such oral statement under oath is duly made, thereupon and without any further act or proof, the judge supervising the master calendar, if any, shall assign some other judge, court commissioner, or referee to try the cause or hear the matter. In other cases, the trial of the cause or the hearing of the matter shall be assigned or transferred to another judge, court commissioner, or referee of the court in which the trial or matter is pending or, if there is no other judge, court commissioner, or referee of the court in which the trial or matter is pending, the Chairman of the Judicial Council shall assign some other judge, court commissioner, or referee to try such cause or hear such matter as promptly as possible.... [¶] Unless required for the convenience of the court or unless good cause is shown, a continuance of the trial or hearing shall not be granted by reason of the making of a motion under this section. If a continuance is granted, the cause or matter shall be continued from day to day or for other limited periods upon the trial or other calendar and shall be reassigned or transferred for trial or hearing as promptly as possible."

dismiss was granted six months after the five years had run. Thus, by any reckoning, the dismissal was premature.

The judgment is reversed.

Bird, C. J., Mosk, J., Richardson, J., Newman, J., Broussard, J., and Tobriner, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.