Filed 8/28/25  Trejo v. Johnson & Johnson Consumer CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHRISTOPHER TREJO, | B324219 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC058023) |
| v. | |
| JOHNSON & JOHNSON CONSUMER, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary Ann Murphy, Judge.  Affirmed.

Niddrie Addams Fuller Singh, Rupa G. Singh, for Plaintiff and Appellant.

O'Melveny & Myers, Amy J. Laurendeau, Charles C. Lifland, and Carlos M. Lazatin, for Defendant and Respondent.

In 2008, Christopher Trejo commenced this action against Johnson & Johnson Consumer Inc. (Johnson & Johnson) for negligence and products liability claims after taking Motrin, an over-the-counter ibuprofen medication. The matter proceeded to trial in 2011 and resulted in a $48 million verdict in Trejo's favor. Johnson & Johnson appealed. In 2017, this court reversed the judgment and remanded the matter for a limited retrial. In July 2022, Johnson & Johnson filed a motion to dismiss the action for Trejo's failure to bring the matter to retrial within three years under the mandatory dismissal statutes (Code Civ. Proc., § 583.320 et seq.)[1] The court granted the motion.

On appeal, Trejo contends the lower court abused its discretion by refusing to toll or exclude from its calculation of the retrial deadline periods in which the court (1) unilaterally continued a pretrial hearing; (2) considered three failed statements of disqualification filed by Trejo; and (3) engaged in other "business and vacation." We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND
**A.     The Complaint, Trial, and Direct Appeal**

In 2005, Trejo took Motrin, a medication manufactured and sold by Johnson & Johnson's subsidiary, McNeil Consumer Healthcare (McNeil). Trejo suffered a reaction from the medication in the form of a rare skin disease called Stevens-Johnson Syndrome (SJS) and the more severe variant called Toxic Epidermal Necrolysis (collectively SJS/TEN). (*Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 116 (*Trejo I*).)

---

[1]     Subsequent unspecified references to statutes are to the Code of Civil Procedure.

Trejo commenced this lawsuit and the matter proceeded to trial in 2011 on claims of strict liability and negligent failure to warn of skin-related symptoms associated with SJS/TEN, as well as strict liability and negligent design defect based on the failure to sell an allegedly safer product called dexibuprofen. (*Trejo I*, *supra*, 13 Cal.App.5th at pp. 116, 123, 142.) By special verdict, the jury found McNeil liable for negligent failure to warn, negligent design defect, and strict liability design defect under the consumer expectation test. Under the same test, the jury found Johnson & Johnson liable for strict liability design defect. Trejo was awarded $39,401,210 in economic, noneconomic, and punitive damages against McNeil and $8,791,670 in punitive damages against Johnson & Johnson. (*Id.* at p. 123.)

In 2017, a different panel of this court issued a lengthy decision reversing the judgment and remanding the matter for retrial, limited to claims for strict liability and negligent failure to warn.[2] (*Trejo I*, *supra*, 13 Cal.App.5th at p. 161.) Trejo's petitions for rehearing and review were denied in July and October 2017, respectively. (*Ibid.*; S243672.)

---

[2]  In *Trejo I*, the parties filed numerous new authority letters and stipulations to extend appellate briefing. Because an evolving theory of federal preemption (impossibility preemption) was at issue, the court required additional briefing from the parties. (See *Trejo I*, *supra*, at pp. 149–152 [noting development of nationwide caselaw applying impossibility preemption to over-the-counter medications].) In a post-remand motion filed in November 2020, Trejo's counsel acknowledged briefing on the preemption issue was necessitated by the United States Supreme Court's decision in *Mutual Pharmaceutical Company, Inc., v. Bartlett* (2013) 570 U.S. 472, "which was decided a few months after briefing on the appeal was completed on February 13, 2013."

**B.    The Initial Retrial Deadline and Proceedings on Remand**

The remittitur was filed in the trial court on October 20, 2017.  From this date, Trejo had three years to bring the matter to retrial.  (Code Civ. Proc., § 583.320, subd. (a)(3).)  Due to the COVID-19 pandemic, the deadline was initially extended by six months to April 20, 2021.  (See Cal. Rules of Court, Appen. I, Emergency Rule 10(b).)[3]

The parties submitted (re)trial setting briefs in April 2018.  To permit additional discovery, Johnson & Johnson requested a retrial date in September 2018.  Represented by lead counsel and several other attorneys throughout the underlying proceedings, Trejo estimated trial would take "at least 23–27 court days" and include "approximately 15–20 witnesses," making it a long-cause trial.  (See Super. Ct. L.A. County, Local Rules, rule 2.8(e) [long-cause trial covers "20 or more days of testimony"].)

One year later (April 2019), Trejo designated 11 non-retained expert witnesses and 17 retained expert witnesses.  The following month, the parties stipulated to complete all fact witness and expert depositions, pretrial motions, and long-cause package submissions no later than August 29, 2019.

Throughout 2019 and 2020, Johnson & Johnson requested Trejo's portions of exhibit and witness lists and proposed statements of the case.  In November 2020, Trejo filed a motion

---

[3]    "Notwithstanding any other law, including Code of Civil Procedure section 583.320, for all civil actions filed on or before April 6, 2020, if a new trial is granted in the action, the three years provided in section 583.320 in which the action must again be brought to trial is extended by six months for a total time of three years and six months." (Cal. Rules of Court, Appen. I, Emergency Rule 10(b).)

4

for trial preference that was denied as premature. Trejo did not refile or otherwise renew his request for trial preference.

On May 17, 2021, the parties filed their notice of submission for long-cause determination.[4] The court rejected the submission as deficient because (1) the joint witness list suggested some witnesses would "possibly" be called to testify; (2) the joint exhibit list "reserve[d] several exhibits" for later use by Trejo; and (3) the package did not include jury instructions or special verdicts. The court found the matter not ready for trial.

Between April 2019 and August 2021, Trejo served 18 new or revised reports from one designated expert (Dr. Soller) and three new reports from other experts (Drs. Alessi, Bamshad, and Sherman). Johnson & Johnson deposed (and in some instances, re-deposed) these experts between February 2020 and November 2021.

## C. Order to Show Cause re Dismissal and the Extended Deadline

In October 2021, the court found a resubmitted long-cause trial package deficient and declined to refer the matter for trial "because the action appears to be subject to mandatory dismissal" under the limitations statutes (§§ 538.320 et seq.). The court issued an order to show cause re dismissal and scheduled a hearing for November 5, 2021.

Following briefing and a hearing, the court found it impossible, impracticable, or futile to bring the case to retrial by April 2021 due to the "unavailability of courtrooms in Los

---

[4] In subsequent briefing, Trejo's counsel recognized his delayed production of exhibits and an exhibit list, as well as "various deficiencies" in his long cause documents.

5

Angeles . . . from at least March 17, 2020[,] to December 31, 2020, due to the COVID-19 pandemic." The court found the parties were diligent in bringing the case to trial during this time. The court discharged the order to show cause, excluded time from March to December 2020 from the limitations period, and imposed a new retrial deadline of February 1, 2022.

At the end of November 2021, Trejo served another expert report with new opinions on cerebral atrophy and a previously undisclosed MRI taken of Trejo in January 2021. Johnson & Johnson moved to strike the report or leave to re-depose the expert.

### D. Stipulations to Extend or Toll the Extended Retrial Deadline

Despite stating "we're ready to start now" at a readiness hearing on January 13, 2022, Trejo's lead counsel sought additional tolling of the retrial deadline under section 583.350[5] from February 1 to August 1, 2022. Defense counsel objected to this request and argued section 583.350 did not apply. After summarizing ongoing discovery issues and the "fait accompli" in Trejo's inability to bring the matter to trial by the extended date (February 1, 2022), defense counsel requested the ability to file a motion to dismiss.

---

[5] Section 583.350 provides: "If the time within which an action must be brought to trial pursuant to this article is tolled or otherwise extended pursuant to statute with the result that at the end of the period of tolling or extension less than six months remains within which the action must be brought to trial, the action shall not be dismissed pursuant to this article if the action is brought to trial within six months after the end of the period of tolling or extension."

6

In light of counsel's argument, the court suggested "call[ing] one juror, meet the statute, and put it over for good cause until the pandemic recedes" to avoid missing the impending deadline. Rather than accepting the court's suggestion, the parties stipulated to toll the limitations period for time between the date of the readiness hearing and the next trial setting conference.

At the next trial setting conference on March 22, 2022, the parties conditionally stipulated to further toll time until May 13, 2022, to allow an additional deposition of a physician newly identified in Trejo's expert reports to take place.[6] The parties maintained their respective positions on the retrial deadline: April 1, 2021, according to defense counsel; and August 1, 2022, according to Trejo's counsel. The court assigned the matter for retrial to a trial judge, where rulings on motions in limine would begin "right away."

At pretrial hearings in May and June 2022, the parties conditionally stipulated to extend the retrial date to June 17 and then July 22, 2022. As before, the stipulations preserved the parties' "arguments they've made on the time to start the trial."

## E. Additional Delay Before the Assigned Trial Judge

### 1. *First Statement of Disqualification*

On March 22, 2022, Trejo filed a notice of association of a new attorney.[7] The same day, the parties elected to forgo filing an affidavit of prejudice (§ 170.6).

---

[6] Johnson & Johnson deposed the physician on April 29, 2022.

[7] Johnson & Johnson questions this attorney's involvement in the case, which included an "improper *ex parte* communication with another Superior Court judge regarding settlement, which defense

7

On March 28, 2022, the court ordered the parties to submit binders containing the following documents no later than April 6, 2022: all motions in limine and responses and replies; agreed jury instructions and disputed instructions; special verdict forms with interrogatories; the operative complaint and answer(s); and exhibit and witness lists.

Two days later, Trejo filed a verified statement of disqualification, arguing the trial judge's personal relationship with newly associated counsel might establish "a bias toward him in this proceeding." (See § 170.3, subd. (c)(1).)[8] On April 8, 2022, the trial judge found "no legal grounds for disqualification" and struck the statement (See § 170.4, subd. (b).) The newly associated attorney filed a notice of disassociation the following month.

### 2. *Second Statement of Disqualification*

At a trial setting hearing on April 14, 2022, Trejo filed a second statement of disqualification, arguing the court's prior order and statements regarding his first statement of disqualification demonstrated judicial bias against him and his counsel. The court paused the proceedings, continued trial

counsel learned about from the court." Johnson & Johnson cites a January 2022 letter from court counsel noting the attorney's unauthorized communications to a court clerk "were not requested, and do not appear to be permitted by law."

[8] Section 170.3, subdivision (c)(1) allows a party to "file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge." An order determining disqualification under this statute "is not an appealable order and may be reviewed only by a writ of mandate." (§ 170.3, subd. (d).)

setting, and scheduled a continued hearing for approximately 50 motions in limine for May 3, 2022. On April 22, 2022, the trial judge struck the second statement of disqualification as unsupported and unduly repetitive. (See § 170.4, subds. (b), (c)(3)).

3.      *Trial Setting Delay and Additional Pretrial Hearings*

The court held 11 days of trial setting and pretrial hearings between May 11 and June 17, 2022, to consider motions in limine, several iterations of jury instructions and verdict forms, objections to 15 binders of deposition testimony sought to be read at trial, and over 1,800 trial exhibits. At many of these hearings, Trejo's counsel raised new, unbriefed arguments that resulted in additional delay.

a.      *New Legal Arguments*

On May 18, 2022, the parties argued the first motion in limine to exclude or permit references to around 50 adverse event reports (AERs) on reactions to Motrin submitted to the Food and Drug Administration by Johnson & Johnson. After noting no discovery had been taken "as to these AERs,"[9] the court inquired of the reports' relevance. Trejo's counsel argued the reports would show "the number of incidents in which they [(Johnson & Johnson)] were put on notice to do a safety signal meeting or a brand review." Counsel noted there was likely a regulation requiring safety signal meetings but said, "I can't cite it off the

---

[9]      The court further noted: "Only two exemplar AERs have been attached [to Trejo's briefing]. There's no indication in the papers filed . . . as to how many reports are at issue, the years of the reports, the medications involved, and the specific diseases involved other than SJS and TEN."

9

top of my head right now." The court replied, "I couldn't -- that wasn't in your papers, and I don't feel that I can rule on this without that, . . ." After the court ordered additional briefing, Trejo's counsel urged "one further thought" for the court to "also consider association because the reg[ulation] requires label change consideration." The court responded: "You need to put this in the brief. I'm not going to take new concepts of law while I'm reading a tentative."

On June 8, 2022, Trejo's counsel raised another unbriefed causation issue and requested an "opportunity to brief this matter" or alternatively to call an expert witness to testify. The following day (June 9, 2022), counsel made another new request to permit testimony about Trejo's "dreams of doing things" to support his claim for damages. The court noted its inability to research the issue "because I didn't see this coming either, . . ."

On June 15, 2022, the court again questioned Trejo's counsel for raising another new theory, "not articulated" in briefing, on applying law of the case to issues of punitive damages. In response, counsel stated, "I don't know," and "it's the law of the case and we have 40 M.I.L.'s to deal with, . . ."

The court continued trial setting and pretrial hearings at all but one of these hearings to permit supplemental briefing.

b.      *New Facts and Evidence*

The court continued pretrial hearings to permit supplemental briefing on new and unbriefed facts and evidence presented by Trejo's counsel. On May 18, counsel argued Johnson & Johnson was subject to punitive damages for failing to report several cases of SJS. When asked for a foundation, counsel relied on communications that were not submitted to the

10

court with the briefing. Later at the hearing, Trejo's counsel argued two "internal reports" established Johnson & Johnson's bad motive, which was "critical for punitive damages." As before, counsel acknowledged these reports were not included in his briefing.

On June 8, Trejo's counsel referred to deposition and trial testimony from a dermatologist he admittedly did not include in his trial briefs. Counsel requested an "opportunity to bring it because I don't have [the deposition or trial testimony] with me."

When marking trial exhibits at a June 15 hearing, Trejo's counsel served a "folded up stack of documents that is almost five inches high." The documents contained over 1,500 line listings from the World Health Organization (WHO) regarding Motrin and adverse skin reactions. The following day, the court stopped another hearing, stating, "And yet again, you are giving us documents at 9:36 [a.m.] . . . as we are arguing it."

On June 17, Trejo's counsel disclosed "yet another new exhibit" of data on SJS/TEN and Motrin. Defense counsel objected to "probably ten inches of folded data on counsel table" and asked Trejo's counsel to stop belatedly introducing new evidence.

c.    *Noncompliance with Court Orders and Rules*

Delayed and continued hearings also resulted from counsel's noncompliance with rules and court orders. On June 8, Trejo's counsel was admonished for violating a prior supplemental briefing order on promotional materials Trejo contended should have appeared on Motrin labeling and offers of proof on a life care plan expert. On June 13, the court noted the "many times" it extended Trejo's deadline to file jury instructions

11

and "once again set another deadline for jury instructions" to be lodged with the court on June 20.

On June 17, the court admonished Trejo's counsel for missing the filing deadline for "another eight inches of documents" he sought to mark as trial exhibits.

### 4. *Third Statement of Disqualification*

At a pretrial hearing on July 8, 2022, Trejo's counsel filed and served a third statement of disqualification. Before continuing the matter, the court summarized outstanding pretrial issues, discussing motions in limine, deposition testimony, and jury instructions and questionnaires. The court continued the hearing to July 19 while cautioning the parties to "be prepared to get a call to come in earlier than ten days" to litigate those issues. The court inquired if the parties had "anything of a procedural nature that you're interested in discussing?" When Trejo's counsel noted July 22, 2022, was a "sensitive" date given defense counsel's position on the retrial deadline, the court stated, "it shouldn't be a problem; right? 22nd. We're going to be back on the 19th. [¶] If you folks want to stipulate to something, send it in with an order this time, . . ."

On July 18, 2022, the court struck Trejo's third statement of disqualification.[10] The same day, the court issued an order continuing the final status conference and pretrial hearing previously scheduled for July 19 to July 25, 2022. The parties received same-day telephonic notice.

---

[10] This court denied Trejo's writ petition challenging the order.

## F.     The Motion to Dismiss, Hearing, and Judgment

On July 25, 2022, Johnson & Johnson filed a motion to dismiss the action due to Trejo's failure to meet the initial (April 20, 2021) and extended (July 22, 2022) retrial deadline.

At the rescheduled pretrial hearing on July 27, 2022, the court placed on the record improper ex parte communications between Trejo's counsel and court staff the day prior.  During those communications, counsel informed staff he intended to file a writ and request the immediate empanelment of a jury.  Over defense objection, the court granted counsel's request and began to "cobble together" a jury from other courtrooms.  To avoid significant prejudice resulting from this process,[11] the parties stipulated to toll an additional period between the July 27 hearing and the court's decision on the motion to dismiss.  The court granted Trejo's request to recess the remaining pretrial proceedings, and with counsel's approval, set a July 29 deadline to oppose the motion to dismiss.  The court also ordered an additional round of pretrial briefing due to Trejo's untimely submissions on a life care planner.

Trejo filed his written opposition on August 1, 2022, requesting tolling of the statutory retrial deadline while (1) his statements of disqualification were pending, and (2) while the trial judge was on vacation or attending to other cases.

Following a hearing on August 5, 2022, the court took the matter under submission.  By 60-page order, the court granted the motion and dismissed the action with prejudice.  Despite its efforts to chronicle the delays caused by Trejo, the court found it difficult "to adequately describe the volume and frequency of the

---

[11]     Johnson & Johnson's trial team was physically isolating due to COVID-19.

13

filings and the time necessary to read, research, prepare tentative rulings and conduct days of hearings that were caused by the cycle of briefing, rebriefing, late briefs, arguments, and re-arguments in this case." Finding the repeated delay in bringing the matter to trial "primarily caused" by Trejo, the court declined to extend or toll periods requested in his opposition. The court entered judgment in favor of Johnson & Johnson. Trejo appealed.

## DISCUSSION

Trejo contends the trial court abused its discretion by refusing to toll or exclude three different periods from its calculation. He argues that bringing the matter to trial was impossible, impracticable, or futile during the periods in which (1) the court "unilaterally" continued pretrial hearings; (2) the statements of disqualification were pending; and (3) the court was engaged in other "press of business and vacation."

### A. Governing Law and Standard of Review

Where the judgment in an action is reversed and remanded for new trial, the action "shall again be brought to trial" within three years after the filing of the remittitur. (§ 583.320, subd. (a)(3).) As this requirement is "mandatory" and not subject to excuse except as provided by statute, the court must dismiss an action if it is not brought within the time prescribed. (§ 583.360, subds. (a)–(b).)

This appeal involves one statutory exception when "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340, subd. (c); hereinafter § 583.340(c).) To establish this exception, the

14

plaintiff must demonstrate "(1) a circumstance of impracticability; (2) a causal connection between that circumstance and the plaintiff's failure to move the case to trial; and (3) that the plaintiff was reasonably diligent in moving the case to trial." (*De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 372 (*De Santiago*).)

We review dismissal orders under the limitations statutes for abuse of discretion. (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1100 (*Gaines*).) We review findings of fact for substantial evidence, conclusions of law de novo, and application of law to facts for abuse of discretion. (*Ibid.*) This review is "limited" because "trial courts are best equipped to evaluate the complicated factual matters that could support such a finding. [Citation.]" (*Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 324 (*Tanguilig*); see *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 731.) The appellant bears the burden of establishing an abuse of discretion. (*Sagi Plumbing v. Chartered Construction Corp.* (2004) 123 Cal.App.4th 443, 447.)

With these principles in mind, we turn to the three periods Trejo contends should have been tolled or excluded under section 583.340(c).

## B.    "Unilateral" Continuance of the July 19 Pretrial Hearing

Trejo contends the court abused its discretion by failing to exclude from its calculation the eight-day period when it "unilaterally continued" the final pretrial hearing originally scheduled for July 19 to July 27, 2022.

1. *Forfeiture*

Johnson & Johnson contends Trejo forfeited this contention, as he did not raise it below. We agree.

"It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; see also *Tanguilig, supra*, 22 Cal.App.5th at p. 330 [forfeiture "specifically applies to fact-based tolling arguments"].)

Trejo recognizes he did not raise this issue when opposing Johnson & Johnson's motion to dismiss. He argues instead that he preserved the issue by raising it in a post-judgment motion for new trial. The authorities on which Trejo relies do not support this proposition. (Cf. *Wilcox v. Ford* (1988) 206 Cal.App.3d 1170, 1178 [issue raised in opposition to motion to dismiss and separate, pre-judgment motion for relief (Civ. Code, § 473(b)), which no party claimed was forfeited, considered on appeal]; *Cohill v. Nationwide Auto Service* (1993) 16 Cal.App.4th 696, 699-702 [discussing waiver of right to jury when matter assigned to bench trial].) "New theories that could have been raised, but were not, is not one of the causes that permits a new trial." (*Insurance Co. of State of Pennsylvania v. American Safety Indemnity Co.* (2019) 32 Cal.App.5th 898, 922.) Trejo has forfeited this contention.

2. *Merits*

Exercising our discretion to consider this period and three new arguments Trejo raises in support, we conclude they lack merit.

16

a.   *Mistaken Calendaring by Trial Counsel*

Trejo argues the court erred in finding him "ineligible for tolling" because his counsel mistakenly calculated an August 1, 2022 retrial deadline by improperly relying on section 583.350. He does so while admitting this mistake by counsel.

Trejo's admission is well-taken.  (See *Lee v. Park* (1996) 43 Cal.App.4th 305, 309 (*Lee*) [noting "obligation" of plaintiffs to properly calculate dismissal date under section 583.310].)

His claim of error, however, is not.  Trejo cites no portion of the dismissal order in which the court deemed him "ineligible for tolling" *because* his counsel mistakenly calendared the deadline. The only order Trejo cites is the order denying his motion for a new trial.  That order provides no discussion of the issue and instead cross-references portions of the dismissal order.[12]  This "frustrates this court's ability to evaluate *which facts* [he] believes support his position, particularly when a large portion of that citation referred to points [and other portions of the record] that appeared to be irrelevant."  (*Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 694.)

Independently correlated and reviewed, these two orders do not support Trejo's argument.  Portions of the dismissal order did recognize that Trejo's counsel "perhaps believe[d] the three-year rule expired on August 1, 2022, the position counsel . . . stated on the record." But that does not mean the court imposed, as Trejo maintains, a "categorical bar to relief" because of this mistake.

---

[12]   The order denying Trejo's motion for new trial provides in relevant part:  "For the same reasons stated in the [dismissal] order at pages 40 [through] 58, [Trejo's] post-judgment request for an additional tolling period between July 19, 2022 and July 27, 2022 is denied."

17

Instead, the court's decision was based on a recurring pattern of "noncompliance with orders, filing late briefs without seeking or obtaining leave to file late briefs, filing briefs that do not comply with the Court's orders, briefs that do not address issues raised in the moving papers[,] requiring additional briefing and additional hearings and numerous continuances."  Its decision was also due to Trejo's failure to pursue "many options" within his control.  These are all proper considerations under section 583.340(c).  (See *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 28 (*Monzon*) [section 583.340(c) "must be determined in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves"].)

### b. *Equitable Estoppel Against the Trial Court*

Trejo next contends that under "the unique facts here," the trial court was compelled to toll the continuance period because it "reassure[d] Trejo that the [retrial] deadline would be safe because the parties would appear" at the originally scheduled hearing on July 19, 2022.  He cites various cases applying equitable estoppel against a party as "a useful analytical tool." We reject this contention for several reasons.

First, as Trejo admits, equitable estoppel is limited to injuries caused by the conduct of a litigant, not a court.  (See *Pacific Merchant Shipping Assn. v. Board of Pilot Commissioners etc.* (2015) 242 Cal.App.4th 1043, 1055; see also *United States v. Doe* (9th Cir. 2016) 987 F.3d 1216, 1220, fn. 3 [estoppel "is a doctrine that applies to the parties, not the court"].)

Second, the representations about which Trejo complains do not give rise to equitable estoppel.  "As we have explained,

18

where a party asserts estoppel, 'the facts proved must be such that an estoppel is clearly deducible from them . . . . [Citation.] [¶] The representation, whether by word or act, to justify a prudent man in acting upon it, must be plain, not doubtful or matter of questionable inference. *Certainty* is essential to all estoppels. [Citation.]' [Citation.]" (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1318 (*Steinhart*).)

Contrary to Trejo's suggestion, the court did not "affirmatively reassur[e]" him his retrial deadline would be safe. At the July 8 hearing, the court continued pretrial matters to July 19 to consider Trejo's third statement of disqualification. It then inquired if Trejo had "anything of a procedural nature that you're interested in discussing?" Counsel responded, "There's a stip[ulation] that is, as you recall, until the 22nd presently" for beginning the retrial. The court replied:

> "So it shouldn't be a problem; right? 22nd. We're going to be back on the 19th. [¶] If you folks want to stipulate to something, send it in with an order this time, . . . . [J]ust send it in because I don't think I can make an order right now. I'm not sure."[13]

Read properly in context, these statements do not evince an intent for Trejo to ignore monitoring the case and his

---

[13] Trejo's appellate briefs omit the last three sentences of this quotation. This is but one instance in which Trejo has misconstrued the record. (E.g., Reply Brief at p. 7 ["those facts show that [the] trial court had assured Trejo's counsel the deadline would be safe whether he took further action or not"].) While counsel advocates on behalf of their clients, they must also provide all facts needed "'to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' [Citations.]" (*Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1095–1096.)

approaching deadline.  (See *Gaines, supra,* 62 Cal.4th at p. 1097 [doctrine applies if party to be estopped "intended that its act or omission be acted upon, or acted in such a way that the [other party] rightfully believed it was intended"].)  On the contrary, these statements convey that counsel could avoid the retrial deadline by sending in another stipulation.  Trejo's argument fails as a matter of law.  (See *Steinhart, supra,* 47 Cal.4th at p. 1315 [court may adjudicate equitable estoppel "as a matter of law" on undisputed facts].)

c.     *Scope of Diligence*

Trejo argues the court erred by finding he failed to exercise reasonable diligence under section 583.340(c) by focusing "shortsightedly on the three-month period between April and June 2022" as the case approached the retrial deadline.  A critical factor in determining whether section 583.340(c) applies is the plaintiff's exercise of reasonable diligence in prosecuting their case.  (*Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 336.)  This duty does apply "'at all stages of the proceedings,' [but] the level of diligence required increases as the . . . deadline approaches.  [Citations.]  The exercise of reasonable diligence includes a duty 'to monitor the case in the trial court to ascertain whether any filing, scheduling or calendaring errors have occurred.'  [Citations.]"  (*Ibid.*; see *Wilshire Bundy Corp. v. Auerbach* (1991) 228 Cal.App.3d 1280, 1287 (*Wilshire Bundy*) ["the greatest diligence is required" as deadline approaches].)

Determining whether a plaintiff exercises reasonable diligence depends "'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming *those* obstacles.  [Citation.]'  [Citation.]"

20

(*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 590 (*Perez*), italics added.)  As such, the "finding of reasonable diligence necessarily applies to the period of excuse, not to plaintiff['s] actions throughout the case."  (*Warner Bros. Entertainment Inc. v. Superior Court* (2018) 29 Cal.App.5th 243, 267; accord, *Gaines*, *supra*, 62 Cal.4th at p. 1101 [conditions must interfere with plaintiff's "ability to 'mov[e] the case to trial' during the relevant period"].)

Here, Trejo seeks to exclude an eight-day period between July 19 and 27, 2022.  As Trejo did not address his diligence during this period below (or here on appeal), the trial court was not called upon to address it.  (See *Perez*, *supra*, 169 Cal.App.4th at p. 592 ["it would indeed be peculiar for us to determine here that the court abused discretion it was never given an opportunity to exercise"].)

In any event, the trial court *did* make findings on Trejo's conduct during this period.  In its dismissal order, the court found Trejo had failed to take steps to bring the case to trial while "the doors of the courthouse remained open to [him], particularly after the [c]ourt struck the third statement of disqualification on July 18, 2022.  Counsel could have requested [a] stipulation, filed an *ex parte* application requesting any judge to swear a jury or to obtain a stipulation from defendant and the [c]ourt would have granted those requests."

The record amply supports this finding.  Trejo received same-day notice of the continuance but did not "check with *the court* at the first indication" this continuance took the matter beyond the retrial deadline.  (See *Hoffman v. State of California* (1985) 171 Cal.App.3d 1100, 1107 (*Hoffman*); *Karubian v. Security Pacific Nat. Bank* (1984) 152 Cal.App.3d 134, 140

21

[counsel could discover calendar issue "in ample time to remedy the situation" by single phone call, letter, or visit to the clerk's office].) Trejo did not "take whatever other measures were available" to avoid missing the retrial deadline. (See *De Santiago*, *supra*, 155 Cal.App.4th at p. 374.) He did not offer a stipulation to extend or toll the retrial deadline, did not seek to impanel a jury, and did not try to advance the case before the deadline lapsed (see Cal. Rules of Court, rule 3.1335).

We do not accept Trejo's attempt to disclaim these avenues as "extraordinary or futile measures" that seem reasonable in hindsight. "Plaintiffs' position in this regard is that there is nothing in the record to support the conclusion that such an effort would have been successful. Nor is there anything indicating that it would not." (*Hoffman*, *supra*, 171 Cal.App.3d at p. 1107.) Trejo's counsel was fully advised he could attempt to impanel a jury or stipulate to further continue or toll the limitations periods. Counsel simply "did not do so." (*Gaines*, *supra*, 62 Cal.4th at p. 1105.)

## C. Statements of Disqualification

Trejo next contends the court should have tolled or excluded 27 days while the court considered his statements of disqualification. He computes these days from March 30 to April 8, 2022 (first statements of disqualification); April 14 to April 22, 2022 (second statement); and July 8 to July 18, 2022 (third statement). Trejo avers it was "impracticable, at the least, to retry the case before the very judge that [he] believed should be disqualified."[14]

---

[14] Trejo does not argue, as he did below, that "jurisdiction of the court to try the action was suspended." (§ 583.340, subd. (a).)

As discussed, the section 583.340(c) exception requires (1) a circumstance of impracticability; (2) a causal connection between the circumstance and the failure to move the case to trial; and (3) reasonable diligence in moving the case to trial. (*De Santiago*, *supra*, 155 Cal.App.4th at p. 372.) Trejo has not established these factors.

Regarding the first factor, Trejo furnishes this court no authority establishing, as a matter of law, that the filing of statements of disqualification constitute circumstances of impracticability under section 583.340(c). "It is well established that ""[e]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation.' [Citation.]"" [Citations.] . . . To hold otherwise would allow plaintiffs to litigate piecemeal every period, no matter how short, in which it was literally impracticable to try the case, thus rendering the statute 'utterly indeterminate, subjective, and unadministerable.' [Citation.]" (*Gaines*, *supra*, 62 Cal.4th at p. 1101.) It is thus "illusory to ask if it [is] impracticable for [the plaintiff] *to try the case* during the period of [a] stay because the posture of the case would not have allowed for such a result. Rather, in these types of circumstances, courts have focused on the extent to which the *conditions* interfered with the plaintiff's ability to 'mov[e] the case to trial' during the relevant period." (*Ibid.*, secondary italics added.)

These principles were applied in *Hartman v. Santamarina* (1982) 30 Cal.3d 762 (*Hartman*) and *Nail v. Osterholm* (1970) 13 Cal.App.3d 682 (*Nail*), cases on which Trejo primarily relies.

In both cases, peremptory challenges were filed on the first days scheduled for trial—after the parties fulfilled pretrial

requirements and "long before" the expiration of trial deadlines. (*Nail, supra*, 13 Cal.App.3d at pp. 685, 687 [completed discovery, pretrial conferences, and jury selection]; see *Hartman, supra*, 30 Cal.3d at p. 764.) However, on the first days scheduled for trial, peremptory challenges to the trial judges (§ 170.6) resulted in dismissal of the juries and lapsed trial deadlines. (See *Nail, supra*, at p. 685 [excusing jury without taking case off calendar]; *Hartman, supra*, at p. 764 [excusing jury and continuing trial beyond deadline].) Among "all of the circumstances" considered were the parties' trial readiness and their "fundamental right . . . to disqualify a trial judge pursuant to the provisions of section 170.6." (*Nail, supra*, at pp. 686–688; see *Hartman, supra*, at p. 764.)

In light of the circumstances before them, the *Nail* and *Hartman* courts held "that if a case is timely set for trial, and if thereafter a challenge against the trial judge to whom it is assigned is allowed, . . . the period that the trial is held in abeyance pending the assignment of another judge is to be disregarded in considering a subsequent motion to dismiss." (*Nail, supra*, 13 Cal.App.3d at p. 686; see *Hartman, supra*, at p. 768 [adopting holding].)

The circumstances in *Nail* and *Hartman* are not present in this case. Trejo did not peremptorily challenge the assigned judge (§ 170.6). He sought, unsuccessfully and repeatedly, to disqualify the assigned judge for cause (§170.3). Challenges for cause are "very different" from peremptory challenges; they are not "automatic" and must be based on a good faith, factual showing. (*Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 865, fn. 8.) Having disclosed "no legal grounds for disqualification" (§ 170.4, subd. (b)) Trejo's statements were

24

stricken, resulting "not only [in a] predictable, but more importantly, invited" period of delay caused by Trejo. (*Tanguilig*, *supra*, 22 Cal.App.5th at p. 329.) Avoidable delays occasioned by a party—which include "meritless" statements of disqualification—"cannot justify tolling." (*Ibid.*; *Messih v. Levine* (1991) 228 Cal.App.3d 454, 460.)

It is also undisputed the parties were not ready for trial during (and even after) the pendency of each statement. Pending his first statement, Trejo missed a deadline to file his pretrial binder. During later periods between May 18 and June 17, 2022, Trejo's counsel introduced new and voluminous binders of proposed trial evidence (AERs; internal reports and communications; WHO data; and deposition testimony), and raised new, unbriefed legal arguments. Counsel also failed to timely submit supplemental briefing and jury instructions.

Trejo furnishes no argument correlating any of these delays with the circumstances for which he seeks tolling. "[I]t has never been held or even hinted that time stands still while the parties are going through the necessary motions of getting a case ready for trial." (*Standard Oil Company of California v. Superior Court* (1976) 61 Cal.App.3d 852, 857.)

Thus, because "nothing prevented [Trejo] from conducting [his] own trial preparation during this time," the periods he seeks to toll do not constitute causally related circumstances of impracticability under section 583.340(c). (*Gaines*, *supra*, 62 Cal.4th at p. 1102.)

## D. Press of Business and Vacation

Finally, Trejo contends the trial court should have tolled 11 days between June 27 and July 8, 2022, "when it was dark to

work on . . . another case and because of a pre-planned [vacation]" of which the parties had six weeks' notice.[15]  As before, Trejo concedes this contention lacks legal support.  His admission is well-taken.  "'"Time consumed by the delay caused by ordinary incidents of proceedings, . . . are not within the contemplation of these exceptions."' [Citations.]" (*Gaines, supra,* 62 Cal.4th at p. 1101; see *Tamburina, supra,* 147 Cal.App.4th at p. 329 ["it is reasonable to expect that counsel will be away from . . . due to illness, vacation and the like"].)

Notwithstanding these well-established principles, Trejo argues the trial court's "insistence" on resolving disputed pretrial issues prior to selecting a jury "transformed" normal waiting into periods of impracticability.  He relies on an order providing: "Jury selection will commence when motions in limine, objections to depositions, the jury questionnaire and other disputed matters have been finally resolved."

Trejo provides this court with no reason to question this pretrial order.  Trial courts "have inherent authority to control their own calendars and dockets" (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267; see § 128, subd. (a)(3)) and generally must receive all trial materials (pre-marked exhibits, jury instruction requests, witness lists, motions in limine, etc.) before a final status conference and commencement of trial.  (See Cal. Rules of Court, rule 3.713(c); Super Ct. L.A. County, Local Rules, rules 3.25(f), 3.25(g); see also Cal. Rules of Court, rule 3.1112(f) ["timing and place of the filing and service of the motion [in limine] are at the discretion of the trial judge"].)

---

15    At the first pretrial hearing on May 11, 2022, the assigned trial judge informed counsel it would be dark June 29 to July 6.

Trejo's argument also blurs the distinction between jury selection and impaneling a pool of jurors to avoid a (re)trial deadline. The former process is deliberative. (See Code Civ. Proc., §§ 222.5, 226.) The latter exercise is not. To avoid an impending trial deadline, "[t]welve prospective jurors [are] put into the box, both sides pass[ ] for cause, the jury [is] sworn, and [the] plaintiff move[s] for a continuance . . . ." (*Hartman*, *supra*, 30 Cal.3d at p. 764; see *Lakkees v. Superior Court* (1990) 222 Cal.App.3d 531, 536 ["it is sufficient that the jury be impanelled [*sic*] and sworn, even if it is subsequently discharged"].) This process, a "'charade'" of "rites denoting the commencement of a trial," is a "'trial-started fiction.'" (*Hartman*, *supra*, at pp. 765–766; *Central Mutual Ins. Co. v. Executive Motor Home Sales, Inc.* (1983) 143 Cal.App.3d 791, 795.)

Trejo's counsel understood this exercise but did not timely pursue it. In January 2022, the supervising judge noted this process while warning about the impending deadline. Later in July, counsel discussed this exercise during improper ex parte communications with court staff. Believing, erroneously, that the deadline was August 1, 2022, counsel did not timely invoke this exercise. (See *Taylor v. Hayes* (1988) 199 Cal.App.3d 1407, 1410–1411 [discussing cases in which "the inadvertent selection of a trial date [by counsel] does not constitute the type of impracticability, impossibility or futility"].)

As we have discussed, section 583.340(c) applies only to circumstances outside Trejo's control that prevented or interfered with his ability to prepare for or begin trial. The cases on which he relies support this proposition. (See *Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1421 [trial moratoriums not tolled because they "did not prevent or interfere with"

27

prosecuting case]; *Chin v. Meier* (1991) 235 Cal.App.3d 1473, 1478 [court-ordered continuance tolled because "both sides announce[d] 'ready' and no courtroom [was] available"]; *Monzon*, *supra*, 224 Cal.App.3d at p. 27 ["the supervising judge trailed the case due to court congestion, not respondents' lack of preparation"].) Trejo does not explain how ordinary delays in this case prevented or interfered with his own trial preparation.

## CONCLUSION

Ultimately, Trejo's contentions fail to acknowledge periods of delay he admits were caused by his counsel's "late or deficient filings and notices of errata." The duty to calculate and track critical dates falls on the plaintiff, not the court. (*Lee, supra*, 43 Cal.App.4th at p. 309; *Wilshire Bundy*, *supra*, 228 Cal.App.3d at p. 1287; see also *Lemaire, Faunce & Katznelson v. Cox* (1985) 171 Cal.App.3d 297, 302 ["a mistake by the trial court does not release a plaintiff from the duty of keeping track of the time for trial"]; Moore & Thomas, Cal. Civil Practice Procedure (2025), Ch. 22, § 22:53 ["it is also no excuse that a failure to meet the five-year [trial] deadline was due to an error of the court or court clerk"].) Trejo does not establish a circumstance of impossibility, impracticability, or futility, a causal connection between any circumstance and his failure to move the case to trial, or reasonable diligence warranting exclusion of periods under section 583.340(c). We therefore perceive no abuse of discretion in the trial court's rejection of Trejo's claims of impracticability.[16]

---

[16] In light of our conclusion, we do not consider Johnson & Johnson's alternative arguments addressing tolling beyond the initial retrial deadline.

28

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.


We concur:



COLLINS, Acting P. J.



TAMZARIAN, J.